[Nos. G012222, G012226. Fourth Dist., Div. Three. Sept. 21, 1993.]

AETNA CASUALTY AND SURETY COMPANY et al., Petitioners, v. THE SUPERIOR COURT OF ORANGE COUNTY, Respondent; WATERCLOUD BED CO., INC., et al., Real Parties in Interest.

324

## COUNSEL

Sedgwick, Detert, Moran & Arnold, Alan J. Freisleben, Todd A. Picker, Alan B. Unterman, Mark C. Raskoff, Lewis, D'Amato, Brisbois & Bisgaard, Joseph K. Hegedus, Lance A. Selfridge, Joseph D. Tuchmayer, Crosby, Heafey, Roach & May, Raoul D. Kennedy and Paul D. Fogel for Petitioners.

McCormick, Barstow, Sheppard, Wayte & Carruth, James P. Wagoner, Robert K. Landen, Sonnenschein, Nath & Rosenthal, Paul E. B. Glad, William C. Morrison-Knox, Thomas Holden, Wright, Robinson, McCammon, Osthimer & Tatum, James C. Nielsen, Charles H. Horn, Buchalter, Nemer, Fields & Younger, Richard de Saint Phalle and Timothy J. Barron as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Callahan & Gauntlett, David A. Gauntlett, Steven L. Dickinson and Jeffrey M. Thompson for Real Parties in Interest.

Heller, Ehrman, White & McAuliffe, Barry S. Levin, David B. Goodwin and Paula G. Urla as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**MOORE, J.**—The primary issue in this case is whether a standard comprehensive general liability policy (CGL) which includes coverage for "advertising injury" potentially affords coverage for inducing or contributing to patent infringement so as to trigger an insurer's duty to defend.

### FACTS AND PROCEDURAL BACKGROUND

Aetna Casualty and Surety Company and Industrial Indemnity Company issued standard CGL policies to Watercloud Bed Co., Inc., and its president, Richard LaBianco (collectively Watercloud).[1] The policies provide the insurers will pay "all sums which the insured shall become legally obligated to pay as damages because of . . . advertising injury to which this policy applies . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury." Advertising injury is defined as "injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of the right of privacy, piracy, unfair competition, or infringement of copyright title or slogan."[2] In *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254 [10 Cal.Rptr.2d 538, 833 P.2d 545] (hereafter *Bank of the West*), our Supreme Court interpreted this standard language to cover only injuries caused by an advertisement. (*Id.* at p. 1263; see also *Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 863 [13 Cal.Rptr.2d 318]; *Standard Fire Ins. Co. v. People's Church of Fresno* (9th Cir. 1993) 985 F.2d 446, 449.)

In April 1987, Somma Mattress Company sued Watercloud in federal court. Somma contended it had patented a water mattress and that Watercloud had sought a license under the patent to manufacture and sell such mattresses. When Somma denied the request, "Watercloud began to manufacture, use, offer for sale and sell . . . , in direct competition with Somma, copies of Somma's patented mattress . . . ." Somma's complaint alleged Watercloud "infringed and . . . actively induced . . . others to infringe, and . . . contributed to . . . the infringement of [Somma's] patent . . . by manufacturing, using and selling, without authority or license . . . , products which infringe [the] patent . . . ." The infringements were alleged to have been "willful and deliberate, and with full knowledge of [Somma's]

---

[1] At oral argument, amicus curiae for Aetna argued for the first time that its policy was not a CGL, but an "extension" policy providing "adjunct coverage." However, in its verified petition, Aetna, like Industrial Indemnity, declared that its policy was a CGL and the superior court so found.

[2] "Piracy" was not contained in the Industrial Indemnity policy.

patent . . . ." The complaint alleged Watercloud's actions were in violation of the United States patent laws. (35 U.S.C. § 271.)[3] No cause of action or theory was asserted for unfair competition or under any state law theory of recovery.

Watercloud tendered defense of the lawsuit to Aetna and Industrial Indemnity. Aetna sent Watercloud a letter agreeing to defend, but reserving its rights to deny coverage, to refuse to pay for the defense, and to seek reimbursement in the event it was determined that its policy did not cover Watercloud's liability. Initially, Industrial Indemnity denied coverage, but later it agreed to defend and indemnify Watercloud for any damages incurred for slander of title, but reserved all of its rights under the policy.

Ultimately, both Aetna and Industrial Indemnity concluded no defense was owed under their policies. In March 1988, Industrial Indemnity withdrew its defense.

The Somma action was settled without payment of money or a judgment being entered. Nevertheless, Watercloud brought the present action in state court against Aetna and Industrial Indemnity, asserting causes of action for breach of the implied covenant of good faith and fair dealing, breach of contract, intentional and negligent infliction of emotional distress, and breach of fiduciary duty, and seeking a declaration that Aetna and Industrial Indemnity were liable to indemnify Watercloud for the total amount of the fees billed by Watercloud's attorneys.

Watercloud filed motions for summary adjudication against the insurers on the duty to defend. When the motions were ultimately heard, the trial court held that direct infringement of a patent was not covered under the subject policies and any other basis for liability against Watercloud would require proof that it knowingly and intentionally induced the infringement. Nevertheless, the court found there was the potential for coverage and therefore a duty to defend triggered by Somma's claim for inducing infringement and for contributory infringement because "the allegations in the Somma action trigger the possibility or potential for liability . . . ." In

---

[3]Title 35 United States Code section 271 provides in pertinent part: "(a) . . . whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent. [¶] (b) Whoever actively induces infringement of a patent shall be liable as an infringer. [¶] (c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such a patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

March 1992, the insurers filed petitions for writs of mandate which were denied by this court. Thereafter, the Supreme Court granted the insurers' petitions for review, then transferred the matter to this court with directions to hear them. Accordingly, this court issued an alternative writ of mandate. We now consider the matter in light of *Bank of the West*.

## DISCUSSION

In *Bank of the West*, the Supreme Court considered the scope of coverage afforded by standard CGL policy language and held that a CGL does not cover claims for advertising injury arising under the Unfair Business Practices Act. (Bus. & Prof. Code, § 17200 et seq.) The court noted that CGL policies generally include coverage for " 'advertising injury' which applies to 'damages' the insured must pay for injury arising out of 'unfair competition' occurring in the course of the insured's 'advertising activities.' " (*Bank of the West, supra*, 2 Cal.4th at p. 1258.)

The duty to defend is of course much broader than the duty to indemnify, and an insurer must defend a case which *potentially* seeks damages within the coverage of the policy. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) However, if there is no potential liability for covered damages as a matter of law, there cannot be the potential for indemnification, nor can there be a duty to defend. (See, e.g., *Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435]; see also *Safeco Ins. Co. of America* v. *Andrews* (9th Cir. 1990) 915 F.2d 500, 502; *Allstate Ins. Co.* v. *Miller* (N.D.Cal. 1990) 743 F.Supp. 723, 729.) Here, the patent infringement allegations against Watercloud create no potential recovery of covered damages because the alleged infringement could not occur "in the course of the named insured's advertising activities." (*National Union Fire Ins. Co.* v. *Siliconix, Inc.* (N.D.Cal. 1989) 729 F.Supp. 77, 79; see also *Bank of the West, supra*, 2 Cal.4th at p. 1275.)

The trial court held that unfair competition could include inducing patent infringement. That holding was before *Bank of the West, supra*, 2 Cal.4th 1254, in which the Supreme Court held that the language used in the policies referred to the common law tort of unfair competition. That tort refers to the passing off of one's goods as those of another. (*Id.* at p. 1263; see also *Chatton* v. *National Union Fire Ins. Co., supra*, 10 Cal.App.4th at p. 863; *Standard Fire Ins. Co.* v. *People's Church of Fresno, supra*, 985 F.2d at p. 449.)

Watercloud argues there is evidence that it was passing off its goods as being those of Somma. Not so. The sole example of such "evidence" is a

brief passage from the deposition testimony of Somma's president, who testified a Somma customer told him another retailer had sold a mattress and wrote "Somma mattress" on a sale's receipt. Even if that were true, it would not provide a basis for coverage. The CGL's cover only unfair competition occurring in connection with *Watercloud's* advertising activity, not that of another retailer. Moreover, in connection with its own advertising activity, the evidence indicated that far from passing off its goods as those of Somma, Watercloud touted itself as "the flotation industry's pioneer in the engineering of soft-sided waterbeds" and stated it had created "a new way of sleeping" and "we are proud to put the Watercloud name upon it." Thus, there was no basis for coverage under the unfair competition clause.

Patent infringement is a separate and distinct area of the law. The grant of a patent is the grant of a statutory monopoly and is an express exception to laws prohibiting monopolies. (*Sears, Roebuck & Co.* v. *Stiffel Co.* (1964) 376 U.S. 225, 229 [11 L.Ed.2d 661, 665, 84 S.Ct. 784].) Patent infringement therefore concerns the unauthorized manufacture, use or sale of a device or process containing an invention reserved exclusively to the patent holder. (35 U.S.C.S. § 271(a); see also 4 Chisum, Patents (1991) § 1.04 (6), § 10.1 et seq.)

One who makes, uses or sells a product incorporating a patented invention is guilty of direct patent infringement. (35 U.S.C. § 271(a).) One who aids or abets infringement of a patent by intentionally inducing infringement is as liable as a direct infringer. (35 U.S.C. § 271(b); see also 4 Chisum, Patents, *supra*, § 17.04(1).)

■ Patent infringement cannot be committed in the course of advertising activities. (*Bank of the West, supra*, 2 Cal.4th at p. 1277; see also *National Union Fire Ins. Co.* v. *Siliconix, Inc., supra*, 729 F.Supp. at p. 80.) The patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a protected invention. Accordingly, patent infringement cannot be covered under the subject policies.

■ Watercloud contends, however, that aiding and abetting a third party's patent infringement can be covered. We disagree. A direct infringer—one who makes, uses or sells another's patent invention—cannot be liable for inducing or contributing to patent infringement. (See *Self* v. *Fisher Controls Co., Inc.* (9th Cir. 1977) 566 F.2d 62, 64, hereafter *Self*.) In *Aro Mfg. Co.* v. *Convertible Top Co.* (1961) 365 U.S. 336 [5 L.Ed.2d 592, 81 S.Ct. 599], the United States Supreme Court held that under 35 United States Code section 271(c) there could be no contributory infringement in the

absence of direct infringement. (365 U.S. at pp. 341-342 [5 L.Ed.2d at pp. 596-597].)

■   With the enactment of the Patent Act of 1952, the concept of contributory infringement was divided between "active inducement" and "contributory inducement." (35 U.S.C. § 271(b), (c); see also *Hewlett-Packard Co.* v. *Bausch & Lomb Inc.* (Fed.Cir. 1990) 909 F.2d 1464 at p. 1469.) However, the legislative history indicates no change in the scope of what constituted "contributory infringement" was intended by the enactment of the Act. (*Aro Mfg. Co.* v. *Convertible Top Co.* (1964) 377 U.S. 476, 485-486 [12 L.Ed.2d 457, 467-468, 84 S.Ct. 1526].) Thus, contributory infringement will not lie against one who is a direct infringer.

As stated in *Self, supra,* 566 F.2d at page 64, the doctrine of contributory infringement is "limited to situations *where defendant itself has not directly infringed the patent* by making, using, or selling the invention, . . . but has induced someone else to infringe the patent." (Italics added; see also *Magicorp* v. *Kinetic Presentations, Inc.* (D.N.J. 1989) 718 F.Supp. 334, 346, fn. 8; *Picker Intern., Inc.* v. *Varian Associates, Inc.* (N.D.Ohio 1987) 661 F.Supp. 347, 350.) Thus, a patent infringement plaintiff can recover from a direct infringer for all damages caused by the infringing product, including damages caused by a purchaser's use of the product, but the defendant may not be required to pay additional sums as a result of allegedly inducing others to infringe. (*Aro Mfg. Co.* v. *Convertible Top Co., supra,* 377 U.S. 476, 508 [12 L.Ed.2d 457, 481].)

■   Here, it is undisputed that Watercloud made and sold the products it is accused of infringing. Its alleged inducement to infringe or contributory infringement is, therefore, merely a part of the direct infringement for which it would be liable because of its manufacturing and sale of the product. As a result, if it is found liable at all, Watercloud would be liable for direct infringement, not for inducing infringement or contributory infringement. (*Self, supra,* 566 F.2d at p. 64; *Aro Mfg. Co.* v. *Convertible Top Co., supra,* 365 U.S. 336, 341-342 [5 L.Ed.2d 592, 596-597].) Inasmuch as there is no potential liability on the allegation of inducement of infringement or contributory infringement, there is no potential recovery of covered damages and therefore no duty to defend. (See *B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 100 [9 Cal.Rptr.2d 894]; *Safeco Ins. Co. of America* v. *Andrews* (9th Cir. 1990) 915 F.2d 500, 501-502.)

Watercloud contends it could be found to have induced infringement because it "also separately sold water mattresses without any bladder, but

included instructions and advertisements on how to insert any of the available bladders into the mattress for proper use including the tube or cylinder bladders to which Somma claimed a patent. These materials taught a retailer or consumer how to set up a Watercloud soft-sided mattress with a tube-style bladder. . . . Only when Watercloud's mattress was combined with tube bladders did Somma contend that it was infringing. Thus, without instructions or advertisements directing the use of tube bladders, sale of the Watercloud mattress would not infringe Somma's patent. Therefore, Watercloud's advertising and instructions are claimed to be the operative fact that induced these retailers and consumers to infringe Somma's patent." There is no citation to the record to support this assertion. Small wonder, since there were no facts or evidence adduced below to substantiate this contention. Furthermore, the Somma complaint alleges it was a codefendant, American National Watermattress Corp., not Watercloud, that sold the individual water cylinders.

■ In addition, even if Watercloud could be liable for inducement of the patent infringement, there would still be no duty to defend. ■ It is against public policy for an insurer to provide coverage for willful conduct. (See *Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571]; see also Civ. Code, § 1668.) California Insurance Code section 533 provides, in pertinent part: "An insurer is not liable for a loss caused by the willful act of the insured . . . ." The purpose of these statutory proscriptions is to discourage the commission of willful conduct by withholding insurance coverage for the conduct. (See *J.C. Penney Casualty Ins. Co.* v. *M.K.* (1991) 52 Cal.3d 1009, 1021 [278 Cal.Rptr. 64, 804 P.2d 689]; *Tomerlin* v. *Canadian Indemnity Co., supra,* at p. 648.)

■ To be liable for inducing infringement, a party must have the specific intent to induce another to infringe. (*Manville Sales Corp.* v. *Paramount Systems, Inc.* (Fed.Cir. 1990) 917 F.2d 544, 553.) Accordingly, it must be shown "the defendant possessed *specific intent* to encourage another's infringement and *not merely that the defendant had knowledge* of the acts alleged to constitute inducement." (*Id.* at p. 553, italics added.)

■ In *Clemmer* v. *Hartford Ins. Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], the Supreme Court addressed what constitutes a "willful act" under Insurance Code section 533, and held that ". . . even an act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.'" (22 Cal.3d at p. 887.) Recently, in *J.C. Penney Casualty Ins. Co.* v. *M.K., supra,* 52 Cal.3d 1009, the court clarified that "*Clemmer* does

not require a showing by the insurer of its insured's 'preconceived design to inflict harm' when the insured seeks coverage for an intentional and wrongful act *if the harm is inherent in the act itself.*" (*Id.* at p. 1025, italics added.)

■ After being denied a license to manufacture and sell the patented water mattresses, Watercloud began to manufacture, use, and sell copies of Somma's mattresses. Such acts are inherently harmful.

■ It is not necessary to analyze the subjective intent of the insured where the act itself is wrongful. (*State Farm Fire & Cas. Co.* v. *Ezrin* (N.D.Cal. 1991) 764 F.Supp. 153, 156.) Rather, the insured's motive "is relevant *only* to the issue of whether his conduct was wrongful in the first instance." (*Fire Ins. Exchange* v. *Altieri* (1991) 235 Cal.App.3d 1352, 1359 [1 Cal.Rptr.2d 360]; accord, *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at p. 96.) Thus, the question is not whether the insured subjectively intended to cause harm, but whether the conduct was intentional and inherently harmful.

Case law is clear that an act that is not inherently harmful in the abstract may nevertheless be so if the insured is aware of the potential harm. So, in *Aetna Cas. & Sur. Co.* v. *Sheft* (C.D.Cal. 1990) 756 F.Supp. 449, the plaintiff alleged the insured had engaged in high-risk sex while intentionally concealing the fact that he had AIDS. (*Id.* at p. 451.) The court focused on the wrongfulness of the act rather than the intent to harm, and held the insured's acts were willful under Insurance Code section 533. (756 F.Supp. at p. 451.) By contrast, in *State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958 [267 Cal.Rptr. 379], the court held that transmission of herpes was not willful because the insured believed he did not have the disease. (*Id.* at pp. 969-972.) In both cases there was intentional sexual activity which led to the transmission of a disease. The only difference was that in *Sheft* the insured knew he had the disease, while in *Eddy* the insured did not know. The act itself was intentional in both cases, but Insurance Code section 533 applied only in *Sheft,* where the insured was aware of the harm inherent in the act.

■ Liability for inducing patent infringement can only be imposed where the defendant "knowingly" induced the infringement. As a result, any acts by Watercloud for which inducement liability could be imposed would have to be intentionally performed with knowledge of their harmful nature. Coverage for such damages is barred by Insurance Code section 533 and Civil Code section 1668. Because as a matter of law there is no potential for recovery of covered damages for inducement of infringement in the absence of a showing that the insured acted with specific intent to induce the infringement, there is no potential for coverage in this case and therefore no duty to defend.

Watercloud argues Insurance Code section 533 does not apply. It cites 35 United States Code section 284, which provides for the enhancement of damages, and argues that section presupposes that an infringing act can be committed in a manner which is not willful. However, that section merely provides the court with the discretion to award treble damages if necessary to adequately compensate the plaintiff for the infringement.[4]

Watercloud seeks to rely on *Westvaco Corp.* v. *International Paper Co.* (Fed.Cir. 1993) 991 F.2d 735 and *Minnesota Mining and Mfg.* v. *Johnson & Johnson* (Fed.Cir. 1992) 976 F.2d 1559 for the proposition that not all infringements are willful and that reliance upon advice of counsel can militate against a finding of willfulness. However, those cases are inapposite inasmuch as both dealt with the question of willfulness in the context of the propriety of assessing treble damages. (35 U.S.C. § 284.) Advice of counsel may be a relevant factor for the court to consider on the issue of whether to impose treble damages. (See, e.g., *Wilden Pump & Engineering Co.* v. *Pressed & Welded Products Co.* (9th Cir. 1981) 655 F.2d 984.) However, to be liable for inducing infringement, the party must have the specific intent to induce another to infringe. (*Manville Sales Corp.* v. *Paramount Sys., Inc., supra,* 917 F.2d at p. 553.)

Our holding is consistent with that reached by the Supreme Court in *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076 [17 Cal.Rptr.2d 210, 846 P.2d 792]. There, a junior high school teacher had apparently nonforcible sexual contact with a 13-year-old student who alleged she was harmed by both the teacher's intentional conduct and by his negligent conduct in publicly embarrassing her by the affair, through inept statements, and through conduct in front of other students. (*Id.* at p. 1079.) As to the sexual contact, the Supreme Court held there was clearly no duty to defend. (*Id.* at p. 1083.) The court also acknowledged that the alleged negligent conduct could preclude a finding of a duty to defend if the allegations of negligent conduct "occurred in such close temporal and spatial proximity to the molestation as to *compel* the conclusion that they are inseparable from it for purposes of determining whether [the insurer] owed a duty to defend . . . ." (*Id.* at p. 1084.) The court apparently contemplated that, at least "in somewhat of a factual vacuum," some alleged negligent conduct could be inseparable from intentional wrongful conduct and therefore not subject to any duty to defend, even where such conduct might have triggered a duty when standing alone. (*Id.* at p. 1084.)

---

[4]Title 35 United States Code section 284 states in pertinent part: "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs . . . . [¶] When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."

By contrast, in this case, the allegations of inducing infringement are by their very nature intentional and would require such a finding before there could be inducement liability. It is, of course, true that "no public policy forbids the *defense* of claims alleging intentional acts." (*Horace Mann Ins., Co.* v. *Barbara B., supra,* 4 Cal.4th at p. 1087.) Here, however, because the gravamen of Somma's action is that Watercloud either directly infringed the patent or intentionally induced infringement, there can be no potential for coverage and therefore no duty to defend.[5]

## DISPOSITION

Let a preemptory writ of mandate issue directing the respondent superior court to set aside and vacate its order granting real parties' motion for summary adjudication of the duty to defend issue.

Sills, P. J., and Sonenshine, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied January 13, 1994.

---

[5]During the course of the proceedings in this court, the parties have filed a plethora of letter briefs, citations to supplemental authority, including unpublished opinions and trial court orders, as well as six requests for judicial notice. We have disposed of those requests in earlier orders. In addition, the parties have filed requests for sanctions against each other which are hereby denied.