30 F.3d 140
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TRAVELERS INDEMNITY COMPANY, a Connecticut corporation,
Plaintiff-Appellee,
v.
LEVI STRAUSS & COMPANY, a Delaware corporation, Defendant-Appellant.
 No. 91-16747.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 2, 1994.*
Decided July 29, 1994.
 
 1
 Before: GOODWIN and SCHROEDER, Circuit Judges, and KEEP, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Levi Strauss & Company appeals a summary judgment in favor of Travelers Indemnity Company. The district court held that Travelers did not have a duty under California law to defend or indemnify Levi Strauss against an underlying lawsuit alleging patent infringement and inducement of patent infringement. We affirm.
 
 BACKGROUND
 
 4
 In the underlying lawsuit for which Levi Strauss seeks indemnification, defendant-intervenor Greater Texas Finishing Corporation alleged that Levi Strauss
 
 
 5
 infringed, is infringing, and is inducing others to infringe, and intends to continue infringing and inducing others to infringe the claims of [United States Patent No. 4,740,213] by using or inducing others to use methods of producing a random faded effect on garments or other cloth products which infringe the '213 patent, and by making, using or selling products which infringe the claims of the '213 patent ...
 
 
 6
 AER at 63. Levi Strauss contends that Travelers is obligated to defend and indemnify it under the terms of three standard form comprehensive general liability ("CGL") policies issued by Travelers to Levi Strauss between November 30, 1987 and November 30, 1990.
 
 
 7
 In the first policy year ending November 30, 1988, Travelers agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... advertising injury." AER at 47. Advertising injury is defined under the policy as
 
 
 8
 injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities. If such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright, title or slogan.
 
 
 9
 Id. (emphasis added). An endorsement to the policy added "plagiarism" to the definition of advertising injury. AER at 48. The Travelers' CGL policies issued for the subsequent two years ending in November 30, 1990 defined advertising injury to include "misappropriation of advertising ideas or style of doing business [and] infringement of copyright, title or slogan," and by endorsement, "plagiarism."[1] AER at 52, 54. None of the policies specifically excluded patent infringement from the definition of advertising injury.
 
 DISCUSSION
 I. Direct Infringement
 
 10
 In two recent cases, we examined whether CGL policy provisions covering "advertising injury" should be construed under California law to include direct patent infringement. Intex Plastics Sales Co. v. United Nat'l Ins. Co., 23 F.3d 254 (9th Cir.1994); Everest & Jennings v. American Motorists Ins. Co., 23 F.3d 226 (9th Cir.1994). We held that "[b]ecause direct infringement involves the making, using, or selling of the patented invention, the infringement does not occur in the course of the insured's advertising activities." Intex Plastics, 23 F.3d at 256 (citing Everest & Jennings v. American Motorists Ins. Co., 23 F.3d at 228-29). Intex Plastics involved a patent on a waterbed, while Everest & Jennings concerned a patent on a special wheelchair. See also National Union Fire Ins. Co. v. Siliconix, Inc., 729 F.Supp. 77, 79-81 (N.D.Cal.1989); Bank of the West v. Superior Court, 833 P.2d 545, 558-61 (Cal.1992).
 
 
 11
 In another recent case, Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500 (9th Cir.1994), we held that the infringement of a patent on an intraocular lens design was not covered under the advertising injury provision of the infringer's liability policy. We explained that
 
 
 12
 [h]ad Iolab [the infringer] merely advertised the intraocular lens but not sold the product, Dr. Jensen [the patentee] could not have accused Iolab of infringing his patent. Since Iolab's advertising of the intraocular lens was not an element of Dr. Jensen's claim, Iolab could not reasonably have expected insurance coverage for its infringement.
 
 
 13
 Iolab Corp., 15 F.3d at 1507. In other words, " 'the patentee is not injured because a product incorporating its invention is advertised, but because the infringer, without consent, used or sold a product utilizing a patented invention.' " Id. at 1506 (quoting Aetna Cas. & Sur. Co. v. Superior Court, 19 Cal.App.4th 320 (1993), review denied (Jan. 13, 1994)).
 
 
 14
 Levi Strauss, however, argues that the claim brought by Greater Texas differs significantly from the forementioned cases, all of which related solely to a process or some aspect of a product that bore no relationship to the insured's advertising activities. The appellant notes that the infringement claim here involves a patent that not only covers a process that imparts a certain look to finished garments, but also the actual look of the garments independent of the process that creates the look. Because the look of a garment is the major feature that Levi Strauss advertises in selling its "stone washed" apparel, appellant argues that the underlying claim raises a potential that the alleged infringement occurred "in the course of ... advertising activities."
 
 
 15
 Although this argument is creative, it is not persuasive. While this is a closer case than the ones we have previously decided, the distinction Levi Strauss seeks to make is untenable. We recognize that the specific look of stone washed apparel may be a much greater factor in its sale and marketing than the look of a waterbed, wheelchair, or intraocular lens. Nevertheless, our decisions make clear that patent infringement claims are based on the use or sale of a patented product, and not on the product's advertisement. Intex Plastics, 23 F.3d at 256 (dispositive issue under California law is whether underlying action is based upon sale of patented product and not on the product's advertisement).
 
 
 16
 It is true that Greater Texas' claim was based in part on the look of Levi's stone washed jeans.[2] However, nowhere in its counterclaim does Greater Texas take issue with the advertisement of that look. The requisite causal connection between Greater Texas' claim and any advertising by Levi Strauss simply does not exist. Iolab, 15 F.3d at 1505 (citing Bank of the West, 833 P.2d at 558-59). Furthermore, we find that an objectively reasonable insured would not expect "advertising injury" to cover the infringement of a patent on a process for stone washing apparel, or even the resulting look. Bank of the West, 833 P.2d at 560. Nor is there any reason for us to carve out an exception to the existing case law. See Iolab, at 1507 n. 5 (noting in dictum that "where the advertising and the infringing sales are merged, as in the sale of a patented product by mail order catalogue, or where an entity uses an advertising technique that is itself patented," there might be coverage).[3]
 
 II. Inducement of Patent Infringement
 
 17
 The underlying lawsuit also included a claim that Levi Strauss induced others to infringe Greater Texas' patent. We recently held that under California insurance law there is no potential for coverage of such a claim. Intex Plastics, 23 F.3d at 257. We explained that "because such conduct is both intentional and inherently harmful, coverage is barred by California Insurance Code Sec. 533, which withholds insurance coverage for any loss caused by a 'willful act' of the insured." Id. (discussing Aetna Cas. & Sur. Co. v. Superior Court, 19 Cal.App.4th 320 (1993), review denied (Jan. 13, 1994)).
 
 III. Motion for Discovery
 
 18
 Levi Strauss claims that the district court erred in granting Travelers' motion for summary judgment before allowing it the opportunity to conduct discovery. Levi Strauss argues that extrinsic evidence may exist that could, inter alia, (1) illustrate the meaning of the policy's definition of advertising injury; (2) demonstrate that the definition is ambiguous; or (3) show a custom or practice inconsistent with Travelers' interpretation. Because we hold that the phrase "in the course of the named insured's advertising activities" does not provide for more than one reasonable interpretation, we also find that the district court did not err in denying Levi Strauss an opportunity to conduct discovery. American Casualty Co. v. Baker, 22 F.3d 880, 890 (9th Cir.1994) (extrinsic evidence irrelevant under California law where terms of contract are not ambiguous).
 
 
 19
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The submission of this case, originally calendared for October 7, 1992, was deferred pending a decision in Intex Plastics Sales Co. v. United National Ins. Co., Nos. 91-55276 and 91-55330. The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 34-4
 
 
 **
 Honorable Judith N. Keep, Chief United States District Judge for the Southern District of California, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Neither party claims that the difference in language between the first and the subsequent two CGL policies is significant. Cf. Iolab Corp. v. Seaboard Sur. Co., 15 F.3d 1500, 1505 n. 3 (9th Cir.1994) (commenting that the California Supreme Court's construction of an insurance policy's advertising injury provision in Bank of the West v. Superior Court, 833 P.2d 545, 558-59 (Cal.1992) was meant to apply to a broad category of advertising injury provisions, not merely the specific policy language at issue)
 
 
 [2]
 Greater Texas contended that "[t]he '213 patent claims methods of producing a random faded effect on garments or other cloth products and the end-products obtained by practicing the claimed methods." AER at 63 (emphasis added)
 
 
 [3]
 Because the case law makes clear that patent infringement does not occur in the course of advertising activity, we need not examine Levi Strauss' remaining arguments based upon the other definitional terms of "advertising injury" contained in the Travelers' policies