**SENTEX SYSTEMS, INC., Plaintiff,**

v.

**HARTFORD ACCIDENT & INDEMNITY CO., Defendant.**

No. CV 93–5227 RAP(EEx).

United States District Court, C.D. California.

Feb. 22, 1995.

David A. Gauntlett, Carol L. Meedon, Callahan & Gauntlett, Irvine, CA, for moving party Sentex Systems, Inc.

Kelly Beck, Hawkins, Schnabel, Lindahl & Beck, Los Angeles, CA, for responding party Hartford Acc. & Indem. Co.

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY ISSUE

PAEZ, District Judge.

Upon full consideration of the pleadings, the moving, opposition, and reply papers, the evidence submitted by the parties, and the oral arguments of counsel, the court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's motion for summary judgment.

### Introduction

This action involves a dispute between an insured and its insurer. The main issue before the court is whether Hartford Accident & Indemnity Co. ("Hartford") breached its duty to defend Sentex Systems, Inc. ("Sentex") under its general comprehensive liability policies' coverage for "advertising injury" and "personal injury." Hartford refused to defend Sentex against a suit by its competitor, Electronic Security Services, Inc. ("ESSI"). In that action, ESSI alleged that one of its former employees violated a noncompetition agreement by accepting employment with Sentex and using confidential information and trade secrets to promote and advertise Sentex's products to ESSI's customers. ESSI alleged injuries resulting from Sentex's advertising and marketing activities.

Hartford contends that insurance coverage under its policies can only be triggered for a suit alleging one of the enumerated offenses in its policies. ESSI sued Sentex for breach of contract, interference with economic relationship, and tortious interference with contract. These claims however, are not specifically identified as covered offenses in the policies. Sentex, nevertheless, claims that Hartford was obligated to defend Sentex, because ESSI's allegations raised "a potential for liability" for the covered offenses under the policies.

As a result of Hartford's outright denial of a defense, Sentex provided its own defense and, ultimately, settled the prior action on its own. On August 30, 1993, Sentex filed this action for breach of contract and declaratory relief, seeking, among other things, to recover all of its defense costs, including the costs of settling the prior action. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

On or about July 12, 1994, the parties filed cross-motions for summary judgment. The cross-motions present no genuine issues of material fact precluding the granting of summary judgment. At the hearing on the cross-motions, the court tentatively granted summary judgment in Sentex's favor. After oral argument, the court took the matters under submission.

The court concludes that Hartford owed Sentex a duty to defend. Because Hartford failed to provide Sentex with any defense,

Hartford violated its contractual obligations under the insurance policies and must now indemnify Sentex for all defense costs incurred by Sentex after tendering its defense to Hartford.

## Factual Background

### The Parties

Sentex designs and manufactures telephone entry security systems for buildings and gated communities. Sentex is a California corporation with its principle place of business in Los Angeles County. Sentex purchased insurance from Hartford, which is authorized to engage in the insurance business in California. Hartford is a Connecticut corporation with its principal place of business in Connecticut.

### The Insurance Policies

On or about January 28, 1989, Hartford issued a Comprehensive General Liability Policy (CGL) to Sentex as Policy No. 72 UUC ZE9741 for the period of January 28, 1989, through January 28, 1990. *See* Exhibit A, attached to Declaration of William Davis in Support of Sentex's Motion for Summary Judgment ("Davis Decl."). On or about January 28, 1990, Hartford renewed its CGL policy for the period of January 28, 1990, through January 28, 1991. *See* Exhibit B, attached to Davis Decl.

Both insurance policies provide substantially similar coverage for damages caused by "advertising injury" and "personal injury":

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies.... We will have the right and duty to defend any "suit" seeking those damages....

This insurance applies to "advertising injury" only if caused by an offense committed: (1) In the "coverage territory" during the policy period; and (2) In the course of advertising your goods, products or services....

This insurance applies to "personal injury" only if caused by an offense: (1) Committed in the "coverage territory" during the policy period; and (2) Arising out of

the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.

*See* Exhibit A, attached to Davis Decl. at 13, 15.

The Hartford policies define "advertising injury" as follows:

... injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

*Id.* at 19. The Hartford policies exclude from coverage "advertising injury" arising out of, among other things, "breach of contract, other than misappropriation of advertising ideas under an implied contract." *Id.* at 15.

The Hartford policies define "personal injury" as follows:

... injury, other than "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy.

*Id.* at 21.

### The Underlying Action: ESSI v. Sentex

On September 18, 1990, ESSI filed an action in the Circuit Court for Prince George's County, Maryland, (the "ESSI Ac-

tion") against Sentex and Paul Colombo ("Colombo"), ESSI's former employee. *See* Exhibit A, attached to Declaration of Diane O. Leasure in Support of Sentex's Motion for Summary Judgment ("Leasure Decl."). ESSI is a direct competitor of Sentex.

ESSI alleged that, on or about January 27, 1989, Paul Colombo ("Colombo") resigned from his position as sales representative, and, shortly thereafter, began working for Sentex as its sales representative for the Eastern United States. Colombo's employment with Sentex allegedly violated a non-competition agreement between ESSI and Colombo.

ESSI also alleged that Sentex, through Colombo, misappropriated ESSI's "trade secrets and other confidential information" including "customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information." *See* Exhibit A, attached to Leisure Decl., ¶¶ 9 and 29. ESSI alleged that Colombo used ESSI's trade secrets to promote and advertise Sentex's products and to solicit business from ESSI's customers. *Id.* at ¶ 7. ESSI further alleged that, as a result of Colombo's activities, Sentex successfully recruited ESSI's customers.

*Hartford's Refusal to Defend Sentex*

On or about April 15, 1991, Sentex's president sent Hartford a letter tendering its defense and requesting indemnification under the 1989 and 1990 policies. *See* Exhibit C, attached to Davis Decl. Sentex sought reimbursement for the legal fees it had incurred in defending the ESSI Action.

On or about August 29, 1991, Hartford denied Sentex's claim. The denial letter stated, in relevant part:

> The allegations made in the complaint do not involve bodily injury, property damage, or personal injury. Since the allegations do involve unfair competition, which sometimes is included as an advertising injury offense, coverage under Advertising Injury Liability Coverage was examined.... Unfair competition is not included as an advertising injury offense. The allegations that you enduced [sic] Mr. Colombo to breach the agreement and interfered with ESSI's economic relationships do not con-

stitute any of the offenses included in the definition of advertising injury.

*See* Exhibit E, attached to Davis Decl.

Thereafter, Sentex hired new counsel, Latham & Watkins and Fossett & Brugger, to provide a defense against the ESSI Action. On August 18, 1993, the parties settled the ESSI Action for $35,000 and stipulated to the dismissal of the lawsuit. The terms of the settlement were set forth in a Stipulation of Dismissal. *See* Exhibit E, attached to Leasure Decl. The stipulation provided, in relevant part, that the allegations in the ESSI complaint resulted from "Sentex's alleged inducement of ESSI customers to use Sentex products based upon Sentex's pervasive advertising and promotional activities..." *Id.* at 103.

## Analysis

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In a trilogy of 1986 cases, the Supreme Court clarified the standard for summary judgment. *See Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electrical Industry Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome it is material. *Id.* at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or

defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. *See also* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123–141 (1994).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, citing *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

The "interpretation of insurance contracts raise questions of law and thus are particularly amenable to summary judgment." *New Hampshire Ins. Co. v. R.L. Chaides Construction Co.*, 847 F.Supp. 1452, 1455 (N.D.Cal.1994). Summary judgment on the duty to defend issue is appropriate, here, because the cross-motions present no genuine issues of material fact.

### B. California law governs.

■ Hartford asserts, without citing any California or Ninth Circuit authority, that Maryland law should be applied in this case. Hartford argues that, since the ESSI Action was filed in Maryland, the court must look to Maryland law to determine whether Hartford had a duty to defend. Under Maryland law, an insurer is only required to look to the four corners of the complaint to determine if a duty to defend is triggered. *See Eastern Shore Financial Resources v. Donegal Mutual Ins. Co.*, 84 Md.App. 609, 581 A.2d 452 (1990).

In addition, Maryland has adopted the exclusive pleading rule, which provides that a plaintiff can only obtain recovery on the theories of liability and for damages expressly alleged in the complaint. Thus, according to Hartford, because Sentex's liability in the underlying action was limited to those claims expressly asserted in the ESSI complaint, Hartford was only required to look to the claims pled in the ESSI complaint to determine whether it had a duty to defend Sentex.

In a diversity action, however, the federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990). Under California law:

> the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.

*Bernhard v. Harrah's Club*, 16 Cal.3d 313, 317–318, 128 Cal.Rptr. 215, 546 P.2d 719 (1976), *cert. denied*, 429 U.S. 859, 97 S.Ct. 159, 50 L.Ed.2d 136.

California courts, therefore, apply a governmental interest test to determine which state law governs. This test involves three basic issues: (1) whether the law of the potentially interested state conflicts with California law; (2) what the interests of each state are; and (3) which state's interests would be more impaired by applying the other state's law. *Bernhard*, 16 Cal.3d at 320–21, 128 Cal.Rptr. 215, 546 P.2d 719. Applying the governmental interest test to this case, it is clear that the court should apply

California law to resolve this insurance dispute.

A conflict definitely exists between Maryland and California law. Under California law, it is well-established that the insurer is required to look beyond the four corners of the underlying complaint to determine whether a duty to defend exists:

> Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy.

*CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.App.3d 598, 607, 222 Cal.Rptr. 276 (1986). *See also Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 296, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Thus, under California law, Hartford was required to look beyond the "labels" or causes of action alleged in the ESSI complaint to determine whether it had a duty to defend Sentex.

California also has a greater interest in applying its law to this case. California Civil Code § 1646 provides, in pertinent part, that:

> [a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made.

The Hartford insurance policies at issue in this case were purchased in California, for a California corporation, which has its principal place of business in California. Further, the dispute over coverage arose in California when Hartford sent Sentex its letter denying coverage from its regional office in San Francisco. Under these circumstances, California has a strong interest in ensuring that its residents receive the coverage they reasonably expect from their insurance.

As Sentex argues, the only potential interest Maryland may have in applying its law related to the prior ESSI action which was filed in Maryland. That action, however, has settled. Because Hartford cannot identify any other interest which Maryland may have, the court finds that there is no reason to apply Maryland law to this case. Accordingly, the court will apply California law.

## C. The duty to defend

■ Under California law, an insurance company's duty to defend "exists independently of and is much broader than its duty to indemnify." *Staefa Control–System v. St. Paul Fire & Marine Ins. Co.*, 847 F.Supp. 1460, 1466 (N.D.Cal.1994). As the California Supreme Court repeatedly has stated:

> [T]he carrier must defend a suit which potentially seeks damages within the coverage of the policy.... Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded.... [T]he existence of the duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit.... Hence, the duty may exist even where coverage is in doubt and ultimately does not develop.

*Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. Thus, an insurer's duty to defend an insured against claims that raise a "potential" for liability is "extremely broad." *Staefa*, 847 F.Supp. at 1466.

The duty to defend "is measured by the reasonable expectation of the insured, and must be assessed at the outset of the case...." *Chaides*, 847 F.Supp. at 1455. As the California Supreme Court has explained, "[i]mposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense in its behalf." *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (citation omitted). The California Supreme Court has recognized that "[a]n insured buys liability insurance in large part to secure a defense of *all* claims potentially within policy coverage, even frivolous claims unjustly brought." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1086, 17 Cal.Rptr.2d 210, 846

P.2d 792 (1993) (emphasis in original). "Wrongful failure to provide coverage or defend a claim is a breach of contract." *Isaacson v. California Ins. Guarantee Assn.*, 44 Cal.3d 775, 791, 244 Cal.Rptr. 655, 750 P.2d 297 (1988).

■ As a result of the insured's reasonable expectation of a defense for *all* claims that raise a "potential" of liability under a policy, the California Supreme Court has allocated each party's burden of proof accordingly in a duty to defend case:

> [T]he insured must prove the existence of a *potential* for coverage, while the insurer must establish the *absence* of any such potential. In other words, the insured need only show that the underlying claim *may* fall within the policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (emphasis in original). A duty to defend does *not* exist where the underlying complaint *"can by no conceivable theory raise a single issue which would bring it within the policy coverage." Id.* at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (emphasis in original).

■ In determining whether a duty to defend exists, courts look to all facts available to the insurer at the time the insured tenders its claim for a defense. *Chaides*, 847 F.Supp. at 1455. Although "[t]he voice of the plaintiff in the underlying action controls," *Chaides*, 847 F.Supp. at 1455, "facts extrinsic to the complaint also give rise to a duty to defend

when they reveal a possibility that the claim may be covered by the policy." *Montrose*, 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.

"[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Id.* at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The court must look "not to whether noncovered acts predominate in the third party's action, but rather to whether there is *any* potential for liability under the policy." *Horace Mann*, 4 Cal.4th at 1086, 17 Cal.Rptr.2d 210, 846 P.2d 792 (emphasis in original).[1]

■ "Any doubts as to whether the facts give rise to a duty to defend are resolved in the insured's favor." *Horace Mann*, 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792. As the California Supreme Court has stated:

> It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer ... [I]f the doubt relates to extent or fact of coverage, whether as to peril insured against, the amount of liability, or the person or persons protected, the language will be understood in its most inclusive sense, for the benefit of the insured.

*Insurance Co. of North America v. Sam Harris Constr. Co.*, 22 Cal.3d 409, 412–413, 149 Cal.Rptr. 292, 583 P.2d 1335 (1978). The "words in an insurance policy must be read in their ordinary sense ..." *Castro v. Fireman's Fund American Life Ins. Co.*, 206 Cal.App.3d 1114, 1119, 253 Cal.Rptr. 833 (1988).

> [However,] a court that is faced with an argument for coverage based on assertedly ambiguous policy language must first at-

1. Courts further have held that an insurer breaches the "covenant of good faith and fair dealing when it fails to properly investigate the insured's claim." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 817, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980); *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 220, 228 Cal.Rptr. 160, 721 P.2d 41 (1986). "[It] is

essential that an insurer fully inquire into possible bases that might support the insured's claim.... [A]n insurer cannot reasonably and in good faith deny payment to its insured without thoroughly investigating the foundation of its denial." *Egan*, 24 Cal.3d at 819, 169 Cal.Rptr. 691, 620 P.2d 141. *See also New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489, 497–498 (N.D.Cal.1993).

tempt to determine whether coverage is consistent with the insured's objectively reasonable expectations. In so doing, the court must interpret the language in context, with regard to its intended function in the policy.... This is because "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."

*Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). If after construing the policy and applying it to the particular facts, there is still any uncertainty as to coverage, the insurer is obligated to provide a defense. *Staefa,* 847 F.Supp. at 1466–1467.

■ When a duty to defend exists, the insurer is obligated to defend against all covered and non-covered claims "until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a non-covered claim." *American Economy Insurance Co. v. Reboans, Inc.,* 852 F.Supp. 875, 878–879 (N.D.Cal.1994), citing *Horace Mann,* 4 Cal.4th at 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792.

**D. "Advertising injury" under the Hartford Policies**

■ To determine whether Hartford owed Sentex a duty to defend, the CGL policies at issue must be examined. The Hartford policies provide coverage for advertising injuries "if caused by" an offense committed: "[i]n the coverage territory during the policy period; and ... [i]n the course of advertising your goods, products and services." *See* Exhibit A, attached Davis Decl., at 15. Thus, for Sentex to have a reasonable expectation of coverage under the Hartford policies for "advertising injury," the following three elements must be satisfied: (1) Sentex must have been engaged in "advertising activity" during the policy period when the alleged "advertising injury" occurred; (2) ESSI's allegations must raise a "potential" for liability under one of the covered offenses; and (3) there must be a causal connection between the alleged injury and the "advertising activi-

ty." *See Chaides,* 847 F.Supp. at 1455; *Foxfire,* 820 F.Supp. at 493.

The parties do not dispute that ESSI's alleged injury occurred during the time Hartford's policies were in effect. The parties, however, do disagree on the following questions: (1) whether Sentex was involved in "advertising activity"; (2) whether ESSI's allegations triggered coverage under any of the covered offenses; and (3) whether the alleged injury was caused by one of the covered offenses in the course of the "advertising activity." As will be discussed below, this Court finds that all three questions must be resolved in Sentex's favor.

**1. Sentex was engaged in "advertising activity."**

The Hartford policies do not define "in the course of advertising." While some courts have construed this term narrowly, other courts have defined "advertising activity" as broadly as possible "to encompass a great deal of activity." *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 80 (N.D.Cal.1989). *See also Foxfire,* 820 F.Supp. at 493. The better view, however, is that the term "advertising" encompasses the kind of personal, one-on-one and group solicitations that Colombo engaged in on behalf of Sentex and for which ESSI complained. *See, e.g., John Deere Ins. Co. v. Shamrock Industries, Inc.,* 696 F.Supp. 434, 440 (D.Minn. 1988), *aff'd* 929 F.2d 413 (8th Cir.1991).

In *John Deere,* 696 F.Supp. at 440, the court adopted the definition of "advertising" found in Black's Law Dictionary: "[a]ny oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business." Another district court recently noted that "[i]n California, even one-on-one oral representations have been found to constitute advertising." *American States Ins. Co. v. Canyon Creek,* 786 F.Supp. 821, 828 (N.D.Cal.1991).

Although the court in *Foxfire,* 820 F.Supp. at 493, did not embrace the broad interpretation of "advertising" that was adopted by the

*John Deere* Court [2], the court did hold that giving "advertising activity" a narrow interpretation is only reasonable if the term is contained in an advertising injury exclusion. Where, as here, "advertising injury" is located within the insuring provisions of a policy, "the term should be interpreted broadly, with any doubts as to coverage resolved in favor of the insured." *Id.* at 493.

Further, in both *Foxfire* and *Chaides,* the court has held that in order to ensure that "advertising" is given a reasonable interpretation, "advertising activity" must be examined on a case-by-case basis:

> Advertising activity must be examined in the context of the overall universe of customers to whom a communication may be addressed. Where the audience may be small, but nonetheless comprises all or a significant number of a competitor's client base, the advertising activity requirement is met. The holding might be different where the target audience are customers of a large organization that markets to the general public or a significant portion of it. But where the business is one with a small customer base and that base, or a significant part of it, is the target audience, the reach is extensive enough to constitute advertising injury. To hold otherwise would effectively preclude small businesses ... from ever invoking their rights to coverage for advertising injury liability....

2. In *John Deere,* one letter by the insured to a single customer soliciting the sale of a product, combined with one product demonstration to customers, was sufficient "advertising activity" to trigger coverage under the policy. 696 F.Supp. at 439–440.

3. In *Chaides,* 847 F.Supp. at 1457, the court found that the solicitation of business from a significant number of customers was sufficient to rise to the level of advertising activity. The court, however, concluded that there was no duty to defend the insured in the underlying action because the injury alleged was not caused by the advertising. The underlying complaint in *Chaides* simply alleged that the insureds had infringed various patents by "making, selling, and/or using slip forms." *Id.* The *Chaides* Court noted that the complaint did not allege injuries as a result of "any advertising, solicitation, or even product demonstration." *Id.* at 1457–1458. Here, ESSI alleged that Colombo used the confi-

*Foxfire,* 820 F.Supp. at 494. *See also Chaides,* 847 F.Supp. at 1456.[3] If an insurer wants to avoid such a broad interpretation of the term "advertising," it can narrow the term's scope by defining it in the policy. *See John Deere,* 696 F.Supp. at 440.

There is no doubt that Sentex, through its employee Colombo, engaged in "advertising" activities when ESSI's alleged injury occurred. Colombo not only promoted and advertised Sentex's products throughout the Eastern United States but he also planned and delivered the presentations for the security entry systems to distributors, dealers, and, occasionally, to property managers, some of whom were customers of ESSI. Colombo also attended trade shows where he spoke to potential customers about the advantages of the entry system manufactured by Sentex over other systems, including the "shortcomings" of ESSI's Entreguard System. These advertising activities formed the basis of ESSI's complaint.

### 2. ESSI's allegations raised a potential for liability under the Hartford policies.

Under the *Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545, a covered offense not only is construed by looking to a term's ordinary meaning but must also be construed in context, by looking to the insurance policy as a whole and to the common law.[4]

dential information and trade secrets he learned in his employment with ESSI in soliciting ESSI's customers and promoting Sentex's security systems. Thus, the ESSI Action alleged advertising injury caused by advertising activity.

4. In *Bank of the West,* 2 Cal.4th at 1272, 10 Cal.Rptr.2d 538, 833 P.2d 545, the California Supreme Court rejected the insured's arguments that the definition of an offense, in that case "unfair competition," should be based on its dictionary meaning or its statutory definition under the Business and Profession Code, §§ 17200, et seq. The Court limited the scope of coverage by narrowly construing this offense to be based on the common law tort of unfair competition. *Id.* at 1263, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545. Specifically, the Court stated that "the term 'unfair competition' can only refer to a civil wrong that can support an award of damages." *Id.* at 1263, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.

Sentex contends that the allegations in the ESSI complaint fall within a reasonable construction of the policies' coverage for (1) "misappropriation of advertising ideas or style of doing business," (2) "disparagement" of goods, and (3) infringement of "title." Sentex further argues that, because these offenses are not defined in the policies, the terms are ambiguous, and that an objectively reasonable insured would expect coverage under the policies for the allegations in the ESSI complaint.

Hartford responds that a term is not ambiguous simply because it is undefined and that, even if the offenses may be ambiguous in certain situations, they are not ambiguous as applied to the ESSI Action. Hartford further argues that Sentex's construction of the covered offenses for advertising injury is unreasonable because, according to Hartford, no court has ever recognized a theory of recovery for the covered offenses that is based on the facts alleged in the ESSI complaint.

### a. "misappropriation of advertising ideas or style of doing business"

Sentex argues that the ESSI Action raised a potential for liability under the covered offense of "misappropriation of advertising ideas or style of doing business." Since the word "or" is used, it is reasonable to construe the offense as covering two separate offenses: the misappropriation of advertising ideas *and* the misappropriation of style of doing business. However, the Hartford policies do not define the terms "misappropriation," "advertising ideas," or "style of doing business." The court, therefore, must look to the common law in construing these two "misappropriation" offenses.

Few courts have interpreted the "misappropriation of advertising ideas and style of doing business" language. The California Supreme Court in *Bank of the West, supra*, 2 Cal.4th at 1262, 10 Cal.Rptr.2d 538, 833 P.2d 545, noted that the "misappropriation" language was added to many insurance policies after 1986, when the Insurance Service Office, Inc., which develops standard form insurance policies, revised the CGL standard form to replace the offense of "unfair compe-

tition" with "misappropriation of advertising ideas or style of doing business." This change suggests that the "misappropriation" language was intended to encompass the common law tort of "unfair competition."

Hartford, however, contends that the "misappropriation of advertising ideas" offense has only been recognized as a theory of liability in situations where a business is approached with an advertising idea *in confidence*, and the business then turns around and uses the advertising idea without any authorization from and without compensation for the creator of the idea. Hartford relies on *Garrido v. Burger King Corp.*, 558 So.2d 79, 83 (Fla.Dist.Ct.App.1990), arguing that a "misappropriation" claim usually involves a breach of an implied contract. Thus, according to Hartford, the "misappropriation of advertising ideas" offense under its policies cannot be reasonably construed to cover situations where an employee is sued by a former employer for the use of confidential information and trade secrets to solicit customers.

As further support for its narrow interpretation of the "misappropriation of advertising ideas" offense, Hartford points to an exclusion provision in its policies. The relevant exclusion provides that the insurance does not apply to an "advertising injury" arising out of a "[b]reach of contract, other than misappropriation of advertising ideas under an implied contract." *See* Exhibit A, attached to Davis Decl. at 15. Hartford argues that, because the exclusion exempts advertising injury that arises out of the "misappropriation for advertising ideas" under an implied contract, it necessarily follows that the "misappropriation" offense in the insuring provisions can only be reasonably construed to cover claims that arise out of a breach of an implied contract.

Hartford's construction of this exclusion is a strained reading of the provision's language. No where in the policies does it state, nor can it be reasonably interpreted to mean, that the insurance *only* applies to "misappropriation" offenses that arise out of implied contracts. The exception to the exclusion can *only* be reasonably interpreted to

mean that, notwithstanding the breach of contract exclusion for advertising injury, the insurance still applies to advertising injury arising out of an implied contract. The "implied contract" language in the exception cannot be read to limit the kind of "misappropriation" claims that are covered under the insuring provisions of the policy.

Hartford's construction in effect would create an exclusion out of the "implied contract" language exception. This attempt by Hartford to create an exclusion to coverage where none exists flies in the face of the well-established principle in insurance contract law that exclusions are strictly construed and insuring provisions are broadly construed. *See American States*, 786 F.Supp. at 829; *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.*, 769 F.2d 425, 428 (7th Cir. 1985).

■ Hartford also asserts that "style of doing business" refers to the name of a business, rather than the manner or method in which a business is conducted. In support of this narrow construction, Hartford cites *Haagen–Dazs, Inc. v. Frusen Gladje Ltd.*, 493 F.Supp. 73, 75 (S.D.N.Y.1980). In *Haagen–Dazs*, the district court held that the Haagen–Dazs' *trademark* did not extend to its "marketing concept or *general* style of doing business." *Haagen–Dazs*, however, was a trademark case, and the court did not interpret the common law tort for "misappropriation of style of doing business."[5]

There is simply no support in the case law for Hartford's narrow construction of the "misappropriation of advertising ideas" offense. The common law tort for "misappropriation," was first recognized by the United States Supreme Court in *Int'l News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), "to protect quasi-property interests." *Reboans*, 852 F.Supp. at 879. The common law tort for "misappropriation" has three basic elements: (1) the plaintiff has created a "thing" through the substantial investment of money, time, and effort such that the "thing" can be characterized as "property"; (2) the defendant has misappropriated this "property" without compensating the plaintiff for its investment; and (3) the plaintiff has been injured by the misappropriation. *Id.*, citing to McCarthy on Trademarks and Unfair Competition § 10.25 (3d Ed.1992). *See also J.A. Brundage Plumbing & Roto–Rooter v. Massachusetts Bay Ins. Co.*, 818 F.Supp. 553, 557 (W.D.N.Y.1993) ("misappropriation of an advertising idea" means "the wrongful taking of the manner by which another advertises its goods and services").[6]

In fact, the "misappropriation" theory has been applied to situations where an employee seeks to compete directly with his former employer. California courts have held that a former employer can sue his former employee for unfair competition for using confidential information and trade secrets to solicit the former employer's customers. *See* Witkin, *Summary of California Law* 9th Ed., Vol. 11 §§ 109–118 (1990). *See also Continental Car–Na–Var Corp. v. Moseley*, 24 Cal.2d 104, 110, 148 P.2d 9 (1944); *Rigging International Maintenance Co. v. Gwin*, 128 Cal.App.3d 594, 606, 180 Cal.Rptr. 451 (1982); *Greenly v. Cooper*, 77 Cal.App.3d 382, 391–392, 143 Cal.Rptr. 514 (1978); *Cal. Francisco Inv. Corp. v. Vrionis*, 14 Cal.App.3d 318, 323, 92 Cal.Rptr. 201 (1971).[7]

California courts further have held that customer lists may be proprietary information worthy of trade secret protection. *See, e.g., Courtesy Temporary Service, Inc. v. Ca-*

---

5. One district court recently observed that the term "style of doing business" has "been used by the courts to refer to a company's comprehensive manner of operating its business." *St. Paul Fire & Marine v. Advanced Interventional*, 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd*, 21 F.3d 424 (4th Cir.1994).

6. The district court vacated the *Brundage* order pursuant to the parties settlement agreement. 153 F.R.D. 36 (W.D.N.Y.1994).

7. Although the California cases treat an employee's misappropriation of trade secrets as "unfair competition," these cases are still relevant to the task of construing the term "misappropriation." The fact that the "unfair competition" offense was replaced by the "misappropriation" offense in most policies suggests that these offenses may be interchangeable, or, at the very least, that, so long as an "advertising injury" is alleged, it is reasonable for an insured to continue to expect coverage for "unfair competition" claims under the "misappropriation" coverage of a policy.

*macho,* 222 Cal.App.3d 1278, 1288, 272 Cal. Rptr. 352 (1990); *American Credit Indem. Co. v. Sacks,* 213 Cal.App.3d 622, 634, 636, 262 Cal.Rptr. 92 (1989).

One California Court of Appeal has summarized the law on misappropriation of trade secrets by former employees as follows:

> A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted.... A former employee's use of confidential information obtained from his former employer and to solicit the business of his former employer's customers, is regarded as unfair competition.... A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.... Although the nature of a trade secret is somewhat nebulous, a characteristic common to those secrets which have found protection from disclosure and use by the courts is the need for their continued use by the former employer in order to maintain a competitive advantage over others.

*Rigging,* 128 Cal.App.3d at 606, 180 Cal.Rptr. 451.

Other courts have held that an insurer has a duty to defend under a "misappropriation of advertising ideas or style of doing business" offense where it is alleged that a former employee misappropriated trade secrets. In *John Deere,* 696 F.Supp. 434, the insureds were sued for, among other things, patent infringement and misappropriation of trade secrets. The insureds had started a business that competed with one of its employee's former employers. The underlying complaint alleged that the insureds used confidential and proprietary information to develop a product which was then sold to the former employer's customers. The insureds tendered their claim for a defense, and the insurer denied the defense and sued for declaratory relief. The district court granted summary judgment, concluding that the suit fell within the scope of coverage for advertising injury.[8] *Id.* at 437.

In *Merchants Co. v. American Motorists Ins. Co.,* 794 F.Supp. 611, 619 (S.D.Miss. 1992), the district court stated that "where it is alleged that the insured improperly acquired, i.e. misappropriated the customer list, then there is coverage under the 'misappropriation of advertising ideas' language of the CGL ... policies." The *Merchants* Court explained that "a customer list may be fairly said to be an 'advertising idea.'" *Id.* at 618. Although the underlying complaint in *Merchants* alleged the misappropriation of trade secrets, the court concluded that the allegation was "sufficiently similar" to the "misappropriation of advertising ideas" language in the policy to give rise to a duty to defend. *Id.*[9]

When the "misappropriation of advertising ideas or style of doing business" offenses in Hartford's policies are construed based on the common law claim for "misappropriation," it is clear that ESSI's allegations in the prior action raised a potential for liability under the CGL policies. ESSI alleged that Sentex, through its former employee, misappropriated the "formula" and "trade secrets" of ESSI's business, "including customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information" regarding ESSI's entire operation. *See* Exhib-

8. The *John Deere* insurance policy stated, in relevant part, that "this insurance applies to 'advertising injury' only if caused by an offense committed ... in the course of advertising your goods, products or services." 696 F.Supp. at 437. "Advertising injury" was defined as "injury arising out of one or more of the enumerated offenses" which included "misappropriation of advertising ideas or style of doing business." *Id.* This definition of advertising injury is almost identical to the definition contained in the Hartford policies.

9. The district court in *Merchants* also held that the insured's alleged conduct in acquiring and using a customer list of a competitor in order to send direct mail solicitation to customers fell within the definition of advertising activity. 794 F.Supp. at 615–616, 617.

it A, attached to Leisure Decl., ¶¶ 9 and 29.[10] According to ESSI, Sentex used these trade secrets to compete directly with ESSI, by soliciting and marketing its products to ESSI's customers.[11]

Based on ESSI's allegations, Sentex had a reasonable expectation of coverage for the covered offenses for "misappropriation of advertising ideas or style of doing business." The court, therefore, concludes that the ESSI Action triggered Hartford's duty to defend Sentex under the Hartford policies.

### b. "infringement of title"

■■■■ Sentex claims that ESSI's allegations also triggered a duty to defend under the offense of "infringement of title." The policy provides coverage for "infringement of copyright, title, or slogan." The Hartford policies do not define this offense.

According to Hartford, "infringement of title" should be construed to mean infringement of a business "name" rather than infringement of an ownership or property interest. The case cited by Hartford, *Clary Corp. v. Union Standard Ins. Co.,* 27 Cal. App.4th 1410, 33 Cal.Rptr.2d 486 (1994), as support for its narrow construction of "title" has been depublished by the California Supreme Court.

Black's Law Dictionary, however, defines "title" both as "[a] mark, style or designation" or "name by which anything is known" as well as the "formal right of ownership of property." This court finds no reason to construe "title" to refer only to a business name. If an insurer wants to limit coverage for "infringement of title" to the copyright context, the insurance policy should define the offense accordingly. Where no limitation to coverage exists, it is reasonable for an insured to expect coverage for the alleged infringement of either a business name or

property so long as the advertising injury occurs in the course of advertising.

One district court has agreed with this construction of the term "title." In *Merchants,* 794 F.Supp. at 618, the court found that an unauthorized use of a customer list "may be said to involve an infringement of . . . [the owner's] title to the customer list." The *Merchants* Court rejected the insurer's argument that the "infringement of title" offense is limited to the context of copyrights." *Id.* Similarly, the court finds that ESSI's allegations in this case were sufficient to trigger a separate duty to defend for "advertising injury" arising out of "infringement of title" offense.

### c. product disparagement

■■■■ Sentex contends that ESSI's allegations also raised a potential claim for product disparagement, which triggered a separate duty to defend under the Hartford policies. The Hartford policies, however, do not define the offense of product disparagement nor do they define the term "disparagement." Black's Law Dictionary defines "disparagement" as "[a] statement about a competitor's goods which is untrue or misleading and is made to influence or tends to influence the public not to buy." According to Black's, disparaging statements are actionable at common law.

Thus, in order for ESSI's allegations to trigger a separate duty to defend for a claim of "disparagement" under the Hartford policies, there must be, at the very least, an allegation that Sentex made false or misleading statements about ESSI's security systems. There is no evidence that Sentex, or his employee, Colombo, "disparaged" ESSI's products in the course of its advertising. ESSI simply alleged that Colombo successfully recruited ESSI's customers by revealing ESSI's "shortcomings" and the "advantages of Sentex's entry system over ESSI's

---

10. These allegations suggest that Sentex was able to successfully recruit ESSI's customers by undercutting ESSI's bidding. If Sentex's allegations are true, ESSI may have had a claim for unfair competition under California law.

11. The extrinsic evidence available to Hartford at the time Sentex tendered its defense further supports Sentex's position that a duty to defend existed for advertising injury under the policies.

ESSI's president testified in deposition that Colombo had misappropriated ESSI's business concepts and ideas regarding how to deal with telephone companies, sources of peripheral supplies, techniques for marketing and methods of servicing customers and used these business concepts and ideas to market Sentex products to dealers and end users more effectively.

products." ESSI, however, did not allege that these statements, in fact, were false. Because ESSI's allegations, even if proven, cannot lead to liability for product disparagement, this court finds that ESSI's allegations did not trigger a separate defense duty under the "disparagement" offense for "advertising injury." [12]

### 3. ESSI's injuries were caused by Sentex's advertising activities.

■ Hartford argues that no causal connection exists between Sentex's "advertising activity" and ESSI's alleged injury, because, according to Hartford, ESSI's injuries could only have arisen as a result of the breach of the non-competition agreement. Once again, this court disagrees with Hartford.

■ In order to have a reasonable expectation of coverage for advertising injury under the Hartford policies, it is true that there must be a causal connection between the alleged advertising injury and the advertising activity. In *Bank of the West*, 2 Cal.4th at 1277, 10 Cal.Rptr.2d 538, 833 P.2d 545, the California Supreme Court rejected the insured's argument that "any connection, however remote," triggers coverage. The Court reasoned that:

> [because t]he definition of "advertising" is quite broad and may encompass a great deal of activity. . . . a great many acts may fall within the ambit of advertising, extending advertising injury coverage far beyond the reasonable expectations of the insured.

*Id.* at 1274, 10 Cal.Rptr.2d 538, 833 P.2d 545. Therefore, as the Ninth Circuit recently stated, "the injury for which coverage is sought

must be caused by the advertising itself." *Microtec v. Nationwide Mutual Ins.*, 40 F.3d 968, 971 (9th Cir.1994).

■ The case law, however, does not require the advertising activities to be the only cause of the advertising injuries. *See John Deere*, 696 F.Supp. at 440. Nor is the insured required to conclusively establish causation at the duty to defend stage. In determining whether a causal connection exists, courts must still apply the "potential for liability" standard. Under this standard, the insured "need only arguably fall within the coverage of the policies, [and] . . . any reasonable differing interpretation must be construed against the insurer." *Id.* "If even part of a cause of action is arguably within the scope of coverage, the insurer must defend." *Id. See also Bank of the West*, 2 Cal.4th at 1275–1276, 10 Cal.Rptr.2d 538, 833 P.2d 545.[13]

The court here finds that there is a sufficient causal connection between ESSI's alleged injuries and Sentex's advertising activities. Sentex used ESSI's trade secrets, including ESSI's customer lists, marketing techniques, and bidding procedures, to advertise and promote Sentex's products and to solicit new business from ESSI's customers. ESSI alleged that its damages resulted not only from the breach of the non-competition agreement and the misappropriation of ESSI's customer lists but also from "the solicitation, directly or indirectly, by defendant Colombo of plaintiff's customers." ESSI further claimed that it lost customers as a result of Colombo's advertising activities.

---

**12.** Sentex contends that ESSI's allegations in the ESSI action also fall within a reasonable construction of the "personal injury" offense of "publication of material that . . . disparages a person's or organization's goods, products or services." Since ESSI's allegations do not rise to the level of product "disparagement," there also can be no reasonable expectation of coverage for ESSI's allegations under the "personal injury" offense of "disparagement."

**13.** It should be noted that the California Supreme Court in *Bank of the West* distinguished *John Deere* as a duty to defend case. 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545. The Court stated in relevant part that:

The [*John Deere*] court did not resolve the [causation] issue. Instead the court disposed of the case on the principle that claims "need only arguably fall within the coverage of the policies" to give rise to a duty to defend. . . . This limited disposition is of no assistance to a court deciding a *coverage* issue.

*Id.* at 1275–1276, 10 Cal.Rptr.2d 538, 833 P.2d 545 (emphasis added). The Court in *Bank of the West* specifically stated that it did *not* address any issues involving the duty to defend. *Id.* at 1258, 10 Cal.Rptr.2d 538, 833 P.2d 545. *Bank of the West*, therefore, cannot be read to limit the *John Deere* holding.

### E. Hartford's duty to indemnify Sentex

Sentex has shown that it was engaged in advertising activities when the alleged advertising injury occurred; that ESSI's allegations raised a "potential" for liability under the covered offenses in Hartford's CGL policies; and that the alleged advertising injury was caused by the advertising activity. Under these circumstances, Sentex had a reasonable expectation of coverage for the ESSI Action and Hartford owed Sentex a duty to defend.

■ Having concluded that Hartford was obligated to defend Sentex under the Hartford policies, the court now turns to the issue of indemnification. Under California law, an insurer's duty to indemnify an insured is "determined, measured, and limited by the terms of the insurance contract and depends upon an ultimate adjudication of coverage." *Chaides*, 847 F.Supp. at 1459, citing *CNA*, 176 Cal.App.3d at 605, n. 1, 222 Cal.Rptr. 276. Under the policies, Hartford agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." *See* Exhibit A, attached to Davis Decl. at 16.

■ Under California law, "once the duty to defend attaches, the insurer is obligated to defend against all the claims involved in [an] action, both covered and uncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a non-covered claim." *Horace Mann*, 4 Cal.4th at 1081, 17 Cal. Rptr.2d 210, 846 P.2d 792. Because Hartford violated its obligation to defend Sentex in the prior ESSI Action, the court finds that Hartford now has a duty to indemnify Sentex for its defense costs. The only issue remaining for the court is to determine the amounts for which Sentex will be indemnified.

Sentex claims that it is entitled to recover all costs and attorneys' fees it incurred in its defense of the ESSI action, as well as the $35,000 it negotiated as a settlement. Hartford, however, argues that simply because the court finds that Hartford had a duty to defend and indemnify Sentex, that does not mean that it must reimburse Sentex for *all*

defense costs. Hartford disputes whether Sentex incurred all of its defense costs for only covered claims under the policies. Hartford also argues that genuine issues of fact exist as to the reasonableness and necessity of the legal work performed in defending the prior ESSI Action.

■ If an insurer breaches its contractual duty to defend, it is "liable for attorneys' fees as provided in the policy, or as 'incurred in good faith, and in the exercise of a reasonable discretion' in defending the action." *Zurich Ins. Co. v. Killer Music, Inc.*, 998 F.2d 674, 680 (9th Cir.1993), quoting Cal.Civil Code § 2778. An insurer may not "dispute litigation strategies undertaken by the defense in an action which it refused to cover." *Foxfire, Inc. v. New Hampshire Ins. Co.*, Nos. C–91–2940, C–91–4364, 1994 WL 361815, at *2 (N.D.Cal. July 1, 1994) (hereafter *"Foxfire II"*).

Although an insurer will not be obligated to pay for the defense of non-covered claims, the "undeniable evidence" standard for allocation of covered and non-covered claims is a "very heavy burden of proof." *Foxfire II*, 1994 WL 361815, at *2. As the court in *Foxfire II* recently stated:

> This burden is justified because ... the insurer having breached its contract to defend should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach.... Moreover, it is consistent with the well-established principle of California insurance law that any doubts regarding whether the facts give rise to a duty to defend must be resolved in favor of the insured.

*Id.* The court further observed:

> As a practical matter, allocation is typically extremely difficult if not impossible.... Even those few courts which have allowed insurers who breached the duty to defend to allocate have recognized this difficulty.

*Id.*

Therefore, unless Hartford can allocate the defense costs between covered and non-covered claims, Sentex will be able to recover all attorneys' fees and other defense costs it

incurred after Sentex tendered its defense. Hartford is not liable for Sentex's pre-tender defense costs, however, since no provision in the Hartford policies supports a contractual obligation for pre-tender costs. *Foxfire II*, 1994 WL 361815, at *5.

 Hartford also may be liable for the amount of the ESSI settlement. If an insurer improperly refuses to defend an insured, the "insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Isaacson*, 44 Cal.3d at 791, 244 Cal.Rptr. 655, 750 P.2d 297. *See also Zurich*, 998 F.2d at 679. As the California Supreme Court recently stated:

> [I]f an insurer wrongfully fails to provide coverage or a defense, and the insurer then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on the breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability claim, and the amount of such liability.

*Isaacson*, 44 Cal.3d at 791, 244 Cal.Rptr. 655, 750 P.2d 297. The insured, however, may only be able to recover that part of the settlement which represents compensation for "damages," as provided for under the Hartford policies. *Id.*

Hartford has not yet presented any evidence which suggests that the settlement between Sentex and ESSI was unreasonable. Unless Hartford can show that part of the settlement was meant to pay for something other than "damages," Hartford also will be able to recover the total amount of the settlement.

Lastly, under California Civil Code section 3287, Sentex may be entitled to pre-judg-ment interest on the unpaid defense costs following Hartford's wrongful denial of a defense. *Foxfire II*, 1994 WL 361815, at *5.[14]

### Conclusion

For the reasons set forth above, the court grants summary judgment on the liability issue in favor of Sentex. The court finds that Hartford had a duty to defend Sentex against the prior ESSI Action. Having denied Sentex a defense, Hartford is now obligated to indemnify Sentex for its defense costs. The only issue remaining in this case relates to the amount of damages due Sentex.[15]

---

14. California Civil Code § 3287(a) provides, in relevant part, that: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day."

15. Sentex's damages should be readily ascertainable by examining the legal bills for attorneys' fees and costs incurred by Sentex after tendering its defense to Hartford. *See Foxfire II*, 1994 WL 361815 at *4.