**NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff,**

v.

**R.L. CHAIDES CONSTRUCTION CO., INC., R.L. Chaides Equipment Co. and R.L. Chaides, and A.C. Aukerman Company, Defendants.**

**No. C–92–2207 MHP.**

United States District Court, N.D. California.

Jan. 7, 1994.

---

Paul A. Giacoletti and Robert A. Ballard, Boornazian Jensen & Garthe, Oakland, CA, for plaintiff.

David A. Gauntlett, Callahan & Gauntlett, Irvine, CA, Thomas E. Schatzel, Thomas E. Schatzel Law Offices, Los Gatos, CA, and Geoffrey W. Snyder, Jackson, MI, for defendants.

### MEMORANDUM AND ORDER

PATEL, District Judge.

New Hampshire Insurance Company ("NHICO") filed this action seeking a declaratory judgment that it has no duty to defend or indemnify its insured, R.L. Chaides Construction Co., Inc. ("Chaides") in connection with an action ("underlying action") brought in United States District Court. The underlying action was brought by A.C. Aukerman Company ("Aukerman") against Chaides, R.L. Chaides, and R.L. Chaides Equipment Co.[1] Now before the court is NHICO's motion for summary judgment on its second claim for relief. NHICO moves for a judicial declaration that it has no duty to defend or indemnify its insured for alleged injuries un-

---

1. Aukerman filed the underlying action, *Aukerman v. Chaides,* No. C–88–20704 (N.D.Cal. filed October 26, 1988) alleging patent infringement by Chaides Construction Co., for making, selling, and/or using Aukerman's patented inventions. *See* Declaration of Paul Giacoletti Dec., Ex. B. The complaint was later amended to include claims for patent infringement by Chaides Equipment Co. and for inducement of patent infringement and patent infringement by R.L. Chaides. *Id.,* Ex. A. Both the original and amended complaint seek injunctive relief, damages, an assessment of interest, prejudgment interest and costs. *Id.,* Ex. A & B.

der the personal injury/advertising injury section of plaintiff's insurance policy ("Policy"). *See* Compl. at 7–8.

Having considered the papers submitted and the arguments of the parties, and for the following reasons, the court GRANTS NHICO's motion for summary judgement.[2]

*BACKGROUND*

I. *The Underlying Action*

Chaides contracts and subcontracts to build highway barrier walls using slip forming methods and apparatus, and has been in such business since the mid–1970's. Declaration of Robert Purdy, at 2. In order to secure contracts, Chaides solicits opportunities to submit bids to perform slip forming services. *Id.* Such solicitations include information on Chaides' expertise, labor and machinery. *Id.* at 2–4. Methods of solicitation include direct communications with prime contractors, by mail or telephone, and direct mail promotions, including published magazine articles relating to Chaides and its slip forming method and apparatus. *Id.* When the solicitations are successful, Chaides is awarded contracts to perform its services. *Id.* at 2.

Aukerman claims to have been issued, and to still be the owner of, Patent Nos. 3,792,133 (1974), 3,957,405 (1976) and 4,014,633 (1977). *Id.*, Ex. A. Each of these patented inventions pertains to a method or apparatus for forming elongated concrete structures. *Id.*, Ex. B. Aukerman claims that Chaides violated its patents either by making, selling, and/or using slip forms embodying the patented inventions or by actively inducing the making, selling and/or using of slip forms embodying the patented inventions.[3] *Id.*, Ex. A. Aukerman filed suit on October 26, 1988. Compl. at 3.

The action brought by Aukerman against Chaides was originally resolved on motion for summary judgment against Aukerman. Compl. at 5. Tender of defense was not made until May 29, 1991, after summary judgment in the underlying action. Compl. at 4. Aukerman appealed the summary judgment ruling and the appeals court remanded the case for further trial proceedings. *Id.* By order filed September 3, 1993, the trial court held Chaides liable for infringement of Aukerman's patents. *See Aukerman v. Chaides,* No. 88–20704 SW, slip op. at 7–9, 1993 WL 379548 (N.D.Cal. September 3, 1993).

II. *The Insurance Policy*

NHICO issued a comprehensive general liability policy to Chaides which became effective on May 15, 1988. *See* Giacoletti Dec., Ex. D. Under the business liability coverage of the Policy, NHICO agreed to pay on behalf of the insured all sums for which the insured might become liable in damages for, inter alia, advertising injury caused by piracy. *Id.*, Ex. D, § II at 10. Defendants claim that NHICO had a duty to defend in the underlying action in view of the policy terms for coverage under advertising injury. NHI-

---

2. By order filed October 15, 1993, this court ordered supplemental briefing by the parties to appraise the court of any relevant case law that has come down since this matter was deemed submitted. While plaintiff adhered to the strictures of that order, defendants have attempted to use this limited order as an opportunity to submit considerable additional evidence and briefing far beyond the confines of the October order. The court does not look kindly on such tactical chicanery, and all evidence and briefing submitted by defendants other than that strictly limited to discussion of cases handed down since this matter was deemed submitted are hereby STRICKEN.

3. Defendants argue that because the Aukerman complaint fails to specify the specific patent law, 35 U.S.C. § 271(a) or § 271(b), under which it is claiming relief, the complaint must be interpreted to allege inducement against all three defen-

dants. Although pleadings are to be interpreted broadly, the court finds defendants' argument without merit. Paragraphs 5 and 6 of Aukerman's amended complaint allege patent infringement against defendants R.L. Chaides Construction Co. and Chaides Equipment Co. by making, selling and/or using slip forms embodying the patented invention. Giacoletti Dec., Ex. A at 2. Only paragraph 7 of Aukerman's amended complaint naming R.L. Chaides as a defendant alleges active patent infringement inducement. *Id.* Because the language of the pleadings is clear as to the claims for relief as to each defendant, the court finds no need to generate additional claims which Aukerman did not specify upon its amendment to its original pleadings. This is especially true given that Aukerman specifically differentiated between infringement and inducement in its amendment to the original pleadings.

CO claims no duty to defend or indemnify and filed this declaratory relief action on June 11, 1992. Resolution of NHICO's summary judgment motion relating to its second claim for relief depends upon the language of the Policy and whether Chaides' acts as alleged in the underlying action created a potential for liability giving rise to a duty to defend under the Policy.

*LEGAL STANDARD*

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (the non-moving party may not rely on the pleadings but must present significant probative evidence supporting the claim); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

The court's function, however, is not to make credibility determinations, *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510, and the inferences to be drawn from the facts must be viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv.*, 809 F.2d at 631.

Furthermore, cases involving "interpretation of insurance contracts raise questions of law and thus are particularly amendable to summary judgment." *John Deere Ins. Co. v. Shamrock Industries, Inc.*, 696 F.Supp. 434, 438 (D.Minn.1988), *aff'd*, 929 F.2d 413 (8th Cir.1991).

*DISCUSSION*

I. *Duty to Defend*

■ An insurer owes a broad duty to defend its insureds. *CNA Casualty of Califor-*

*nia v. Seaboard Sur. Co.*, 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). That duty is measured by the reasonable expectation of the insured, and must be assessed at the outset of the case. *See Fire Ins. Exchange v. Jiminez*, 184 Cal.App.3d 437, 441, 229 Cal. Rptr. 83 (1986). The voice of the plaintiff in the underlying action controls. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 277, 54 Cal. Rptr. 104, 419 P.2d 168 (1966). Therefore, NHICO's duty to defend "must be analyzed and determined on the basis of any *potential* liability arising from facts available to [NHICO] from the [Aukerman] complaint or other sources available to it at the time of the tender of defense." *CNA Casualty*, 176 Cal. App.3d at 605, 222 Cal.Rptr. 276; *see also Westfield Ins. Co. v. TWT, Inc.*, 723 F.Supp. 492, 495 (N.D.Cal.1989).

■ Chaides claims that the Aukerman complaint alleges sufficient facts to create a potential for liability and that NHICO accordingly has a duty to defend under the Policy. However, in determining whether a duty to defend exists, the court must look not only to the allegations in the underlying complaint, but also to any facts available at the time of the defense tender to determine whether there was a potential for liability under the policy. *See CNA Casualty*, 176 Cal.App.3d at 605, 222 Cal.Rptr. 276.

Additionally, review of the language of the insurance policy itself is essential to determining the existence of a duty to defend. In the instant action, the Policy defines an advertising injury as "injury arising out of offense committed during the policy period occurring in the course of the named insured's advertising activities if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition or infringement of copyright titles or slogan." Giacoletti Dec., Ex. D, § II. at 10. Thus, an "advertising injury" consists of three elements: (1) an advertising activity by the named insured; (2) allegations that fit into one of the offenses enumerated in the policy; and (3) an injury that arises out of one of those offenses which was committed during the policy period and in the course of the advertising activity. One of the offenses listed in the Chaides Policy is "piracy".

Chaides contends that the claims of patent infringement and inducement to infringe in the underlying complaint are covered by the Policy because they constitute "piracy" within the meaning of the Policy, and that the injuries complained of occurred in the course of plaintiff's advertising activities. In resolving this issue, the court will address each of the three elements required to invoke coverage of an advertising injury.

## A. Parent Infringement.

### 1. *"Advertising Activity"*

■ The first element of an advertising injury requires a finding that the insured was engaged in an "advertising activity." While the Policy in this action defines "advertising injury," it does not define "advertising activity." What conduct constitutes "advertising activity" is a question currently in some dispute. Some courts construe the term as broadly as possible,[4] while others define it in very narrow terms.[5] The parties dispute whether Chaides' solicitations and related conduct rise to the level of advertising activity within the meaning of *Bank of West v. Superior Court*, 2 Cal.4th 1254, 1276 n. 9, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992).

Advertising activity must be examined in the context of the overall universe of customers to whom a communication may be addressed; to hold otherwise would effectively preclude small businesses such as Chaides from ever invoking their rights to coverage for advertising injury liability under policies like those issued by NHICO. This court has found in another action, *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489, 494 (N.D.Cal.1993), and concludes here, that where the advertising audience is small but nonetheless constitutes all or a significant portion of the insured's client base, the advertising activity element is satisfied. Here the advertising was directed on a continuous basis to a significant number of Chaides' customers, not just one or a few. Purdy

Dec. at 2–4. Such advertising included at least some information concerning the alleged infringing apparatus and method of Aukerman. *Id.* Accordingly, the court finds that Chaides' conduct in soliciting business rises to the level of advertising activity.

### 2. *"Piracy"*

The second element of an advertising injury requires that the underlying allegations fit within one of the enumerated offenses covered in the Policy. For purposes of this motion NHICO concedes that "piracy" includes patent infringement. This court accepts the reasoning of *National Union Fire Ins. Co. v. Siliconix, Inc.*, 729 F.Supp. 77 (N.D.Cal.1989), which involved policy language substantially the same as here and in which Judge Lynch found that absent a more limiting definition of the term "piracy" in the policy itself, the term is ambiguous and therefore broad enough to include patent infringement. *Id.* at 79. In accordance with that reasoning, the court finds that the term piracy in the instant Policy embraces patent infringement and inducement to infringe.

### 3. *"In the Course of Advertising Activity"*

The third element of advertising injury, and the one most critical to resolution of this motion, requires that the complained of injuries occurred during the policy period in the course of the advertising activity. This court concludes that they did not. Only the unauthorized making, using or selling of a patented invention constitutes infringement. 35 U.S.C. § 271(a); *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1523 (Fed.Cir.1992). However, the mere advertising of a potentially infringing device does not itself constitute infringement. *See Ling–Temco–Vought, Inc. v. Kollsman Instrument Corp.*, 372 F.2d 263 (2d Cir.1967); *Siliconix*, 729 F.Supp. at 79.

Although the factual allegations in the underlying action are skimpy, it is clear that Aukerman, the plaintiff in that action and holder of three patents for slip forming,

---

4. In *John Deere,* the court looked to Black's Law Dictionary to define advertising activity as "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business. . . ." 696 F.Supp. at 434 (citations omitted).

5. *See Fox Chemical Co., Inc. v. Great Am. Ins. Co.,* 264 N.W.2d 385, 386 (Minn.1978) (narrowly defining advertising activity as "public or widespread distribution of the alleged [advertising] material").

claimed that defendants were infringing its patents by "making, selling and/or using slip forms". Amended Compl. at ¶¶ 5, 6 and 7. Aukerman sought damages as well as injunctive relief. Nowhere in that complaint did Aukerman claim it was injured by any advertising, solicitation, or even product demonstration by Chaides. Furthermore, in the parties' submissions to this court there is no evidence that the underlying injuries are predicated upon anything other than the making, using, or selling of Aukerman's apparatus and method of creating elongated concrete structures. Giacoletti Dec., Ex. A.

The acts of making, selling or using simply do not arise out of the insured's advertising activities. Selling is not equivalent to advertising. Nor do the injuries complained of stem from advertising activities. *See Siliconix,* 729 F.Supp. at 79–80 (injury must bear more than some relationship in time, place or circumstance to the advertising). Rather, Aukerman's alleged injuries occurred, if at all, when Chaides made, used, or sold Aukerman's slip forming apparatus or method.

The court rejects defendants' contention that there need not be a causal connection between Aukerman's injury arising out of piracy and Chaides' advertising activities. This court agrees with both the *Bank of West* and the *Siliconix* courts that a causal connection is required; otherwise, any harmful act, if advertised, would fall within the Policy's coverage. *See Bank of West,* 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545; *Siliconix,* 729 F.Supp. at 80.

Additionally, the context of the Policy strongly indicates the requirement of a causal connection between the injury and the advertisement. In most instances, the other types of advertising injuries enumerated in the Policy have a causal connection with advertising, *e.g.,* defamation, violation of privacy, infringement of copyright, title, or slogan. *See Bank of West,* 2 Cal.4th at 1276, 10 Cal.Rptr.2d 538, 833 P.2d 545.

Chaides has adverted to several cases which it believes support a contrary interpretation. These cases are not persuasive. With one of these cases, *Aqua Queen Mfg., Inc. v. Charter Oak Fire Ins.,* 830 F.Supp. 536 (C.D.Cal.1993), this court respectfully disagrees. The *Aqua Queen* decision contains no facts from which this court can extrapolate application to this case. The court in *Aqua Queen* merely states without explanation that the plaintiff's advertising activities "were part and parcel of its sales and that selling an infringing product is an infringement occurring in the course of advertising." *Id.* at 538. This court cannot determine what those activities were.[6] Despite adopting the *Siliconix* definition of "piracy," the *Aqua Queen* court in the very next sentence holds contrary to *Siliconix's* determination that infringement does not include advertising.[7] *Id.*

Defendants' submission of the decision in *Omnitel v. Chubb Group of Ins. Cos.,* 26 USPQ2d 1933, 1993 WL 438839 (Cal. Superior 1993) is no more persuasive. The facts of that case are unique and quite dissimilar to those here. In *Omnitel* the underlying action involved the sale of infringing modems. *Id.* at 1934. Integral to the sale were advertising materials that were instructive and aided in the infringement. *Id.* at 1938. The

---

6. For the same reason, the court respectfully disagrees with the decision in *Arbek Manufacturing, Inc. v. Select Ins. Co.,* 28 USPQ2d 1435, 1993 WL 528182 (C.D.Cal.1993), in which the court simply repeated the language in *Aqua Queen* to reach an identical result.

7. Furthermore, cases put forth by the plaintiffs for consideration in *Aqua Queen* are of no help to Chaides here. In *Aqua Queen,* the plaintiffs sought to have that court consider Judge Stotler's opinion in *Aetna Casualty & Surety Co. v. Watercloud Bed Co., Inc. et al,* No. C–88–200 AHS, 1988 WL 252578, 1988 U.S.Dist. LEXIS 17572 (C.D.Cal. November 17, 1988), but the

court declined to do so because that case was subsequently rendered moot. *See Aqua Queen,* 830 F.Supp. at 538 ¶ 7. Plaintiffs in *Aqua Queen* also sought to have that court consider Judge Marshall's opinion in *Intex Plastics Sales Co. v. United Nat'l Ins. Co., et al.,* 18 USPQ2d 1567, 1990 WL 279505 (C.D.Cal.1990). However, the *Aqua Queen* court declined to consider that case as well, 830 F.Supp. at 538 ¶ 7. Furthermore, Judge Marshall herself subsequently held in *Intex* that there must be some causal connection between the injury (infringement) and the advertising itself. *Intex Plastics Sales Co. v. United Nat'l Ins. Co., et al.,* No. C–90–2050 CBM, 1992 WL 437984, *1 (C.D.Cal. June 10, 1992).

advertising materials here are distinctly different.

This court finds that *Siliconix* is more persuasive on the facts of this case, and accordingly holds that the patent infringement alleged here, as defined by section 271(a), could not reasonably be found to have occurred in the course of advertising activity.

### B. Inducement to Infringe

■ Chaides next argues that the allegation of inducement to infringe added to the amended complaint invoked the Policy and gave rise to a duty to defend.[8] Inducement, defined as infringement by section 271(b), is the active and knowing aiding or abetting of another's direct infringement. *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 675 (Fed.Cir.1990). Inducement constitutes infringement under section 271(b), and advertising has been found to be a sufficient basis for a claim of inducement. *See Continental Ins. Co. v. Del Astra Industries, Inc.*, 25 USPQ2d 1317, 1992 WL 471300 (N.D.Cal.1992).

However, one who is a direct infringer cannot also be an inducer. *See Jervis B. Webb Co. v. Southern Systems, Inc.*, 495 F.Supp. 145, 147 (E.D.Mich.1980) (citing *Self v. Fisher Controls Co.*, 566 F.2d 62, 64 (9th Cir.1977). The conduct alleged in the complaint and the facts known at the time of the tender of defense involved Chaides' own making, using and selling of its process. It was not engaging in an activity that would cause another to directly infringe.

Defendants' authorities do not teach differently. In *Free Standing Stuffer, Inc. v. Holly Development Co.*, 187 USPQ 323, 1974 WL 20219 (N.D.Ill.1974), the alleged infringer sought to escape liability by contending it was not responsible for infringement because others had performed or ordered the acts of infringement. The court found that "[i]nfringement is not avoided by contracting with others to carry out the method of a patent". *Id.* at 335. Here all of the work advertised was to be performed by Chaides—there was no contracting with or causing of others to perform the infringing acts.

The facts in *National Tractor Pullers Ass'n, Inc. v. Watkins*, 205 USPQ 892 (N.D.Ill.1980) are wholly distinct from the facts here. In that case an association responsible for setting rules for tractor pulling contests (a sport not readily understood by those unfamiliar with the local county fair milieu), adopted rules requiring that "sleds" used in the contests carry the embodied invention. In order to qualify for the contests, eager but rule-abiding sled makers manufactured sleds that infringed Mr. Watkins' patent. The Association was found to have induced those who directly infringed by manufacturing the offending sleds, which bore such colorful names as the Harpe Suggs Stopper, the Landoll and Heartbreak I. Again, the facts are totally different from those here. Chaides did the manufacturing; it did not induce others to manufacture.

In *Syntex, Inc. v. Paragon Optical, Inc.*, 7 USPQ2d 1001 (D.Ariz.1987), another case relied on by Chaides, the defendant was found to have induced infringement by providing instructions to customers. Chaides' advertising, while somewhat descriptive, did not instruct customers so that they could make, use or sell an infringing product or process.[9]

That the underlying action was always about direct infringement and not inducement to infringe is borne out by the discov-

---

8. The timing of this amendment is curious. There are no facts in the original or the amended complaint that support a claim of inducement to infringe. A motion for leave to amend was filed several months after the filing of the action, and it appears from the record that there was no opposition. Discovery had progressed through the third set of interrogatories and the third request for production of documents, and defendants had even made an offer of judgment under Federal Rule of Civil Procedure 68. On the eve of a settlement conference, the amended complaint was filed adding the inducement claim. Whether this was merely coincidental or happily acceded to in order to engage the benefits of the insurance policy cannot be divined from the record.

9. Other cases cited by Chaides are equally inapposite or relate to contributory infringement which is defined in section 271(c) and is distinct from inducement to infringe. *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468–69 (Fed.Cir.1990). Contributory infringement was not alleged in either the original complaint or the amended complaint.

ery, pretrial and trial in that action. While the question for the purposes of the duty to defend inquiry is whether there is a potential for coverage under the policy, the potential must be real and not chimerical. In this case the court finds that there never was a genuine potential claim for inducement and, therefore, no duty to defend merely because of the incantation of the words "inducement to infringe" in the amended complaint.[10]

The result is no different merely because R.L. Chaides appears to be the only party alleged in the inducement claim.[11] Mr. Chaides is the major shareholder and President of the corporate entities alleged as the direct infringers in the amended complaint. Purdy Dec. at 2. It was in his capacity as President that he conducted the advertising activities which defendants contend gave rise to the claims in the underlying action. *Id.* at 5–11 & Exs.

■ Corporate officers or employees may be liable for inducing infringement by their corporate employer even if the corporation is the alter ego of the officer. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578–79 (Fed.Cir.1986). Thus, Mr. Chaides potentially could be liable for inducing R.L. Chaides Construction Co. or R.L. Chaides Equipment Co. to infringe the Aukerman patents.

However, his potential liability no more implicates the policy than does the corporate defendants' conduct. The inducement that

section 271(b) proscribes is inducing the infringer to infringe—it is an aiding and abetting liability. The direct infringers were not the target of the advertising activities, but rather the disseminators. It was their activities that Mr. Chaides is alleged to have induced, *i.e.*, "inducing the making, selling and/or using of slip forms embodying the patented invention." Amended Compl. at 7. His solicitations were not directed at potential infringers, but at customers. Because the only advertising activities were the solicitations and, as explained above, the solicitations did not induce customers to engage in infringing conduct, Aukerman could not have sustained any injury arising out of the advertising activity.

Accordingly, the court finds that the injuries complained of in the underlying action did not present the potential of liability under the Policy because they did not arise out of any advertising activity. Therefore, plaintiff did not have a duty to defend the claims in the complaint or the amended complaint.

## II. *Duty to Indemnify*

■ An insurer's duty to indemnify is "determined, measured, and limited by the terms of the insurance contract and depends upon an ultimate adjudication of coverage." *CNA Casualty*, 176 Cal.App.3d at 605 n. 1, 222 Cal.Rptr. 276 (citations omitted). The Policy under which Chaides seeks indemnification contains language which states that "[NHICO] will pay on behalf of [Chaides] all

---

**10.** During the pendency of this motion, an intermediate California court opinion addressing the issue of coverage for inducement to infringe was ordered published after an initial order of nonpublication. *See Aetna Casualty & Surety Co. v. Superior Court*, 19 Cal.App.4th 320, 23 Cal. Rptr.2d 442 (1993). That publication order has spurred great debate in the legal community, and has resulted in a depublication brawl now pending before the California Supreme Court. *See The Recorder*, January 4, 1994 at 1.

In order to assess any implications that *Aetna* has on the instant action, this court ordered the parties to submit supplemental briefing. After reviewing the *Aetna* decision and the supplemental briefs, the court has determined that while the decision in *Aetna* would support NHICO's motion for summary judgment, it is unnecessary to that result. The court in *Aetna* held that inducement to infringe in the course of advertising activities cannot give rise to a duty to defend under the advertising injury provisions of a com-

prehensive general liability policy. *Id.* at 328–29, 23 Cal.Rptr.2d 442. Thus, assuming the validity of the *Aetna* decision, in the instant action NHICO would as a matter of law have no duty to defend Chaides from any inducement to infringe claim. However, it is unnecessary for this court to enter the melee surrounding the vitality of the *Aetna* reasoning, and the court declines to do so. As explained below, even assuming that inducement to infringe could give rise to a duty to defend, nothing in the underlying complaint in this action sets forth a legitimate inducement to infringe claim. Thus, regardless of the ultimate resolution of the *Aetna* imbroglio, this court's finding that NHICO had no duty to defend Chaides remains undisturbed.

**11.** The court assumes for the purpose of this order that Mr. Chaides is insured under the policy.

sums which the insured shall become legally obligated to pay as damages ... because of ... advertising injury caused by an occurrence to which this insurance applies." Giacoletti Dec., Ex. D, § II at 10.

Because there is no potential for liability raised in the underlying action, the court holds that NHICO has no duty to indemnify Chaides for any liability found in that action.

*CONCLUSION*

For the foregoing reasons, the court finds that NHICO had no duty to defend or indemnify Chaides, and its motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.