MONARCH E & S INSURANCE SERVICES, INC. and National Casualty Company, Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

No. CV 98–2013–CAS RZX.

United States District Court, C.D. California.

Feb. 9, 1999.

---

Law Office of Kristi W. Dean, Encino, CA.

Robie & Matthai, Edith R. Matthai, Karen R. Palmersheim, Los Angeles, CA.

### ORDER RE: CROSS–MOTIONS FOR SUMMARY JUDGMENT

SNYDER, District Judge.

#### I.  *Introduction*

This matter arises out of the claim by plaintiff Monarch E & S Insurance Services ("Monarch") and National Casualty Co. ("National")[1] that Monarch's commercial general liability ("CGL") insurer, State Farm Fire and Casualty Co. ("State Farm") had a duty to defend and indemnify Monarch in an underlying misappropriation of trade secrets and unfair competition action brought against Monarch by Burns & Wilcox Insurance Services, Inc. ("Burns & Wilcox"). The matter is presently before the Court on the parties' cross motions for summary judgment and summary adjudication.

#### II.  *Factual Background*

##### A.  *The Underlying Litigation*

Plaintiff Monarch is a wholesale insurance brokerage firm. On December 19, 1995, Monarch employed Helene.Briskin ("Briskin"), a former employee of Burns & Wilcox. On December 22, 1995, Burns & Wilcox filed a complaint in the Los Angeles Superior Court against Monarch, styled *Burns & Wilcox Insurance Services, Inc. v. Helene Briskin and Monarch E & S Insurance Services, Inc.*, Case No. BC 141316 ("the Burns & Wilcox litigation"), alleging that Briskin had misappropriated trade secrets from Burns & Wilcox and that Monarch had benefitted from this alleged misappropriation. On January 30, 1996, Burns & Wilcox filed an amended complaint, adding Commercial Underwriters Insurance Co. ("CUIC") as a defendant.

In both complaints, Burns & Wilcox alleged that, while Briskin was employed by Burns & Wilcox, she learned "Burns & Wilcox's confidential, proprietary and trade secret information." Burns & Wilcox' First Amended Complaint, attached as Exhibit B to Monarch's Mem. P. & A. ("Burns' & Wilcox' FAC"), ¶ 11. Burns & Wilcox also alleged that "[t]his confidential information has independent economic value, actual and potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, such as other

---

**1.** National Casualty is Monarch's errors and omissions carrier and is seeking contribution from State Farm.

entities engaged in the business of developing and marketing insurance programs." *Id.* ¶ 9.

Under its claim for misappropriation, Burns & Wilcox alleged that "[d]efendants have disclosed and used Burns & Wilcox's confidential, proprietary and trade secret information in competition with Burns & Wilcox, without the express or implied consent of Burns & Wilcox." *Id.* ¶ 20. Under its claim for unfair competition, Burns & Wilcox alleged that:

> Defendants have competed unfairly with Burns & Wilcox by misappropriating said information, and using said information to compete with Burns & Wilcox. Thus, defendants have unfairly and unjustifiably misappropriated and exploited, for their own advantage and profit, Burns & Wilcox's time, effort and investment of money in developing its personal articles floater insurance program, have inequitably pirated the fruits of Burns & Wilcox's time, effort and investment of money, and have gained an unearned commercial benefit therefrom.
>
> Therefore, defendants have engaged in unfair competition.

*Id.* ¶¶ 27–28.

The complaints do not define the nature of the information allegedly misappropriated, nor do they state the way in which the information was allegedly used.

In answers to interrogatories propounded by Briskin, Burns & Wilcox stated the following:

*SPECIAL INTERROGATORY NO. 7:*

> State all facts upon which YOU base your contention, set forth in paragraph 14 of the COMPLAINT, that "Defendants have disclosed and used Burns & Wilcox's confidential, proprietary and trade secret information in competition with Burns & Wilcox."

*RESPONSE TO SPECIAL INTERROGATORY NO. 7:*

> . . . .

Briskin worked for Burns & Wilcox and its predecessor in interest, Howard James, from February 6, 1974 to December 15, 1995. During this period, Briskin learned Burns & Wilcox's trade secrets regarding its insurance program for PAF"s. Briskin knew this information was confidential. On or about December 7, 1995, Briskin submitted her resignation to Burns & Wilcox.

Monarch is a competitor with Burns & Wilcox in the wholesale insurance business. Briskin is currently employed by Monarch.

> . . . .

Briskin, Monarch and CUIC have contacted retail agents and reinsurers who previously dealt with Burns & Wilcox. Moreover, Briskin and Monarch have issued policies to individual insureds who purchased PAF"s through Briskin while she worked for Burns & Wilcox. Burns & Wilcox is informed and believes that Defendants have disclosed and used Burns & Wilcox's confidential, proprietary and trade secret information in doing the foregoing.

Burns & Wilcox's Responses to Helene Briskin's First Set of Special Interrogatories, attached as Ex. L to Monarch's Opp. to State Farm's Mot. Summ.J.

In October 1996, the parties settled the case for $32,500, of which Monarch paid $23,394.63 and National Casualty paid $9,105.37. In addition, Monarch paid $11,-605.37 and National Casualty paid $6,532.55 for attorneys' fees.

**B.   *The CGL Policy***

Monarch is insured under a CGL policy ("the policy") issued by State Farm. It is undisputed that the policy was in effect at all times relevant to this action.

The policy contains a provision obligating State Farm to "pay as damages because of . . . advertising injury to which this insurance applies. . . . This insurance applies only: . . . to advertising injury caused by an occurrence committed in the

coverage territory during the policy period. The occurrence must be committed in the course of advertising your goods, products or services." Def.'s Mot. Summ.J., Ex. 101, at 20. Occurrence is defined as "the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury." *Id.* at 32.

The policy further obligates State Farm to "defend any claim or suit seeking damages payable under this policy." *Id.* The policy defines advertising injury as:

> injury arising out of one or more of the following offenses:
>
> . . .
>
> c. misappropriation of advertising ideas or style of doing business. . . .

*Id.* at 30.

On March 7, 1996, Monarch tendered defense of the Burns & Wilcox litigation to State Farm. On March 13, 1996, State Farm sent Monarch a reservation of rights letter, in which State Farm questioned its duty to defend the suit. On May 17, 1996, Monarch forwarded to State Farm copies of advertising material it had published, announcing Briskin's association with the firm.[2] On August 5, 1996, following its investigation into the facts of the claim, State Farm declined to defend or indemnify.

On December 8, 1997, Monarch and National Casualty filed suit against State Farm in Los Angeles Superior Court. On February 13, 1998, Monarch and National Casualty filed a first amended complaint against State Farm, alleging breach of insurance contract, breach of the implied covenant of good faith and fair dealing, and seeking declaratory relief and equitable indemnity and contribution. On March

20, 1998, State Farm timely removed to this Court, on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332 and 1441.

### III.  *Standard for Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party bears the burden of proof at trial, "the moving party must make a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Gipson v. Kajima Eng'g & Constr., Inc.,* 972 F.Supp. 537 (C.D.Cal.1997).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. *See* Fed.R.Civ.P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). *See also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the exis-

---

**2.** Specifically, Monarch forwarded a copy of a brief article in the January 8, 1996 issue of *Insurance Journal,* in which Monarch announced that Briskin had joined the firm and that she would be "establish[ing] a new personal lines/specialty risk division that will concentrate on floater policies;" a copy of an advertisement placed in the January 22, 1996 issue of *Insurance Journal,* and a copy of a brief article announcing Briskin's affiliation with the firm, published in the January 11, 1996 issue of *Underwriters' Report* (collectively, "the marketing materials"). None of the marketing materials explains the nature of the products that Briskin would be developing and/or selling.

tence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. *See also Abromson v. American Pac. Corp.,* 114 F.3d 898, 902 (9th Cir.1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 631 & n. 3 (9th Cir.1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted); *Valley Nat'l Bank of Ariz. v. A.E. Rouse·& Co.,* 121 F.3d 1332, 1335 (9th Cir.1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. *See Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. *Analysis*

■ An insurer owes a broad duty to defend its insureds, measured by the reasonable expectation of the insured and assessed at the outset of the case. *See New Hampshire Ins. Co. v. R.L. Chaides Const. Co.,* 847 F.Supp. 1452, 1455 (N.D.Cal.1994) (citations omitted). "[T]he carrier must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 275, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). In determining whether a duty to defend exists, the court must look "not only to the allegations in the underlying complaint, but also to any facts available at the time of the defense tender to determine whether there was a potential for liability under the policy." *New Hampshire Ins. Co.,* 847 F.Supp. at 1455.

■ Where the claim of a duty to defend is based on an advertising injury provision, there must be a causal connection between the alleged injury and the insured's advertising activities before there can be coverage. *See Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 553, 833 P.2d 545 (1992).

Here, Monarch asserts that the allegations by Burns & Wilcox created a duty for State Farm to defend it under the advertising injury provision of the policy. In particular, Monarch asserts that the allegation that Monarch solicited Burns & Wilcox' former clients triggered coverage. Monarch also points to the marketing materials which it proffered as evidence in connection with this motion. *See supra* fn. 2.

In support of its contentions, Monarch cites two cases. In *Lebas Fashion Imports of U.S.A. v. ITT Hartford Ins. Group,* 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36 (1996), the court held that allegations of trademark infringement in a complaint were sufficient to trigger the potential for coverage under an advertising injury provision which defined advertising injury in part as "misappropriation of an advertising idea or style of doing business." In so holding, the *Lebas* court stated that misappropriation of an advertising idea could reasonably apply "to wrongful taking of the manner or means by which another advertises its goods or services." *Id.* at 44. This interpretation of "misappropriation of advertising idea" is broader than that asserted by State Farm, who contends that the phrase encompasses only allegations of trade dress infringement. However, the holding in *Lebas* does not assist this Court in determining a duty to defend in the instant case, because the *Lebas* holding is specific to the issue of trademark infringement.

Monarch also relies on *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.,* 882 F.Supp. 930 (C.D.Cal.1995). In *Sentex,* as in this case, the underlying suit· involved a claim of misappropriation

brought by a company against a former employee and a competitor company. In finding that Sentex' insurer had a duty to defend under an advertising injury provision, the court held that allegations that Sentex had "misappropriated the 'formula' and 'trade secrets' of [underlying plaintiff]'s business, 'including customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information'" was sufficient to give rise to a duty to defend as misappropriation of advertising ideas. *Id.* at 943–44.

On appeal, the Ninth Circuit affirmed the district court's decision, but on "somewhat narrower grounds than those relied upon by the district court." *Sentex Systems, Inc. v. Hartford Accident & Indem. Co.*, 93 F.3d 578, 579 (9th Cir.1996). In affirming, the Ninth Circuit noted that "[i]t is significant that [underlying plaintiff]'s claims for misappropriation of trade secrets relate to marketing and sales and not to secrets relating to the manufacture and production of security systems." *Id.* at 580. Moreover, the court declined to uphold the district court's conclusion that "allegations of misappropriation of a customer list, because it comes within common law concepts of unfair competition, can alone trigger coverage under the language of these policies pertaining to 'misappropriation of advertising ideas.'" *Id.* at 581.

■ In the instant case, there is no evidence that Burns & Wilcox was alleging that Monarch, through Briskin, misappropriated secrets relating to marketing and sales. Furthermore, the marketing materials proffered by Monarch as evidence of advertising activity do not appear to disclose any trade secrets or display any special kind of marketing idea and are, rather, merely announcements of Briskin's affiliation with Monarch.[3] Moreover, there is no apparent causal connection between Mon-

arch's advertising activity and Burns & Wilcox' assertion of injury. As noted in *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219 (9th Cir.1996), "the *advertising activities* must *cause* the injury—not merely expose it." *Id.* at 1223. Here, the advertising activity undertaken by Monarch served only to announce that Briskin would be offering a particular line of products and does not establish the causal connection required under *Bank of the West.*

Accordingly, the Court finds that State Farm owed Monarch no duty to defend.

Furthermore, because State Farm did not owe a duty to defend, there is no basis for finding that State Farm acted in bad faith in denying Monarch's tender of defense. *See Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). Similarly, because it had no duty to defend Monarch, there is no basis that State Farm owes contribution to National, nor is there any basis for declaratory relief or indemnity. Therefore, defendant's motion for summary judgment is hereby granted, as to all claims.

---

3. It is also significant to note that Burns & Wilcox' complaint was filed before any of the marketing materials were published, indicat-

ing that the marketing materials were not the source of damages claimed by Burns & Wilcox.