114 Cal.Rptr.2d 843 (2002)
94 Cal.App.4th 1155
Mohammed A. HAMEID, Plaintiff and Appellant,
v.
NATIONAL FIRE INSURANCE OF HARTFORD, Defendant and Respondent.
No. G026525.
Court of Appeal, Fourth District, Division Three.
December 27, 2001.
As Modified January 17, 2002.
Review Granted April 10, 2002.
*846 Law Offices of Barnard F. Klein and Barnard F. Klein, Trabuco Canyon, for Plaintiff and Appellant.
Hawkins, Schnabel, Lindahl & Beck, Jon Kardassakis and Kurt G. Gresenz, Los Angeles, for Defendant and Respondent.

OPINION
RYLAARSDAM, Acting P.J.
Plaintiff Mohammed A. Hameid sued defendant National Fire Insurance for breach of contract and breach of the covenant of good faith and fair dealing, alleging defendant unreasonably refused to provide a defense under a policy it had issued. Defendant obtained summary judgment on the ground there was no duty to defend as a matter of law. Plaintiff appeals from the summary judgment, asserting the court erred in granting defendant's motion, denying his motion for summary adjudication, and striking punitive damages from his complaint.
Defendant had a duty to defend plaintiff under the advertising injury provision of the policy. Thus, the judgment is reversed. We also order the trial court to grant plaintiffs motion for summary adjudication as to the duty to defend. The court's ruling on the remainder of plaintiffs motion for summary adjudication is affirmed because there are triable issues of fact. Finally, the complaint alleged sufficient facts to support a claim for punitive damages, and we reverse the order striking that claim.

FACTS
Since November 1998, plaintiff has owned and operated Salon T'Shea, a beauty salon, located near Bellezza Salon/Day Spa, owned by KWP, Inc. Bellezza hired Doreen Howard in 1992 and Heather Billington in 1996. When they began work, neither had any clients. In early 1999, Howard and Billington left Bellezza and rented work stations from plaintiff.
KWP sued plaintiff, Howard, and Billington for misappropriation of trade secrets, unfair competition, breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with prospective economic advantage, seeking damages and an injunction. KWP alleged Howard and Billington misappropriated customer lists, price lists, and pricing policies to solicit KWP's customers and undercut its prices, all for the benefit of plaintiff.
Plaintiff alleges he was the insured under a general liability policy issued by defendant. The policy provided coverage for damages caused by "Advertising injury" and "Personal injury." After plaintiff tendered defense of the KWP suit, defendant denied coverage. Plaintiff prevailed on the KWP suit and then filed this action against defendant to recover his expenses in defending the suit and for punitive damages.
Plaintiff brought a motion for summary adjudication of issues as to defendant's duty to defend under the policy, whether defendant's refusal to defend was bad faith, and for attorney fees and costs. Defendant filed a motion for summary judgment, or in the alternative, for summary adjudication, claiming the entire action was without merit, or the first and second causes of action were without merit as was the claim for punitive damages. Defendant also filed a motion to strike punitive damages. All motions were heard at the same time. The court first granted the motion to strike. It then granted defendant's motion for summary judgment and *847 denied plaintiffs motion for summary adjudication.

DISCUSSION

Duty to Defend
The parties are at odds about whether defendant was required to defend plaintiff in the KWP suit. The duty to defend arises whenever the insurer "`ascertains facts which give rise to the potential of liability under the policy.'" (CNA Casualty of California v. Seaboard Surety Co. (1986) 176 Cal.App.3d 598, 606, fn. 1, 222 Cal.Rptr. 276.) The insurer must consider all facts available at the time its insured makes demand for a defense. (Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 295, 24 Cal. Rptr.2d 467, 861 P.2d 1153.) On review, "[w]e look not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy. [Citation.]" (Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal.4th 1076, 1084, 17 Cal. Rptr.2d 210, 846 P.2d 792.)

"Advertising Injury"
Plaintiff contends it was covered under the "advertising injury" provision of the policy. The policy states defendant will pay the amounts plaintiff "becomes legally obligated to pay as damages because of ... `advertising injury' to which this insurance applies...." The insurance applies to "`[advertising injury' caused by an offense committed in the course of [plaintiff] advertising [his] goods, products or services...."
Coverage for advertising injuries requires the presence of each of the following: (1) Plaintiff must have been engaged in advertising activity; (2) KWP's allegations and the underlying facts must have conveyed a potential for liability for one of the insured offenses, in this case, misappropriation of advertising ideas; and (3) there must be a causal connection between the injury alleged by KWP and plaintiffs advertising activity. (New Hampshire Ins. Co. v. R.L. Chaides Const. Co., Inc. (N.D.Cal.1994) 847 F.Supp. 1452, 1455; see Peerless Lighting Corp. v. American Motorists Ins. Co. (2000) 82 Cal.App.4th 995,1009, 98 Cal.Rptr.2d 753.)

Advertising Activity
Advertising activity is not defined in the policy or by state law. Nor has this issue been widely addressed by California courts; more decisions come out of federal courts. And these decisions have not been consistent.
In Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, although not addressing the issue, the court noted in passing the disagreement among cases: "Most of the published opinions hold that `advertising' means widespread promotional activities directed to the public at large. [Citations.] [¶] Of the published opinions, only the courts in [two of the cases noted] appear to have held that the term `advertising' can also encompass personal solicitations." (Id. at pp. 1276-1277, fn. 9, 10 Cal.Rptr.2d 538, 833 P.2d 545.) But Peerless Lighting Corp. v. American Motorists Ins. Co., supra, 82 Cal.App.4th at pp. 1008-1009 and fn. 7, 98 Cal.Rptr.2d 753, questioned that conclusion, stating there was some dispute as to whether "widespread promotional activities" "in fact [was] the rule adopted by a majority of published opinions." Although both the California Supreme Court and courts of appeal have recognized "advertising activity" can have more than one definition, none has decided what the meaning shall be in this context.
We must interpret the policy, which we do de novo, as a matter of law. (Palmer v. Truck Ins. Exchange (1999) 21 Cal.4th 1109, 1115, 90 Cal.Rptr.2d 647, 988 *848 P.2d 568.) We give the words their "`ordinary and popular ...'" meaning unless the policy attributes to them a special and technical meaning. (AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253.) That means we "view the relevant policy terms as a layperson would read them, not as an attorney or insurance expert might analyze them." (Peerless Lighting Corp. v. American Motorists Ins. Co., supra, 82 Cal. App.4th at p. 1012, 98 Cal.Rptr.2d 753.) But we confine our reading to the "`... objectively reasonable expectations of the insured.' [Citation.]" (Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545.) If this does not resolve the ambiguity, we must construe the policy against the insurer and in favor of coverage. (Ibid.; Arnette Optic Illusions Inc. v. ITT Hartford Group, Inc. (C.D.Cal.1998) 43 F.Supp.2d 1088, 1097; see La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1994) 9 Cal.4th 27, 37, 36 Cal.Rptr.2d 100, 884 P.2d 1048.)
Plaintiff is a new business with a small overall audience and customer base, and we review its activity "in the context of the overall universe of customers to whom a communication may be addressed. Where the audience may be small, but nonetheless comprises all or a significant number of a competitor's client base, the advertising activity requirement is met.... [W]here the business is one with a small customer base and that base, or a significant part of it, is the target audience, the reach is extensive enough to constitute advertising injury. To hold otherwise would effectively preclude small businesses ... from ever invoking their rights to coverage for advertising injury liability...." (New Hampshire Ins. Co. v. Foxfire Inc. (N.D.Cal.1993) 820 F.Supp. 489, 494; see also New Hampshire Ins. Co. v. R.L. Chaides Const. Co., Inc., supra, 847 F.Supp. at p. 1456.)
Plaintiff and its employees solicited customers by advertising in the Pennysaver, sending mailers, and telephoning Howard and Billington's clients from Bellezza. Viewed in the context of a start-up, community beauty salon, these activities "fit[ ] neatly into th[e] commonly understood meaning of advertising ...," i.e., "the act of calling public attention to one's product through widespread promotional activities. [Citations.]" (El-Com Hardware, Inc. v. Fireman's Fund Ins. Co. (2001) 92 Cal. App.4th 205, 217, 111 Cal.Rptr.2d 670 [catalog distributed by manufacturer held to be "advertising"].) Here, plaintiffs alleged wrongful conduct constituted "advertising" under the policy.

"Misappropriation of Advertising Ideas or Style of Doing Business"
Having concluded plaintiffs actions fell within the definition of advertising activity, we now look to whether it also was conduct covered under the policy. The policy's definition of advertising injury includes "injury arising out of "[misappropriation of advertising ideas or style of doing business...." Defendant argues this definition does not cover the conduct alleged by KWP, use of confidential information and trade secrets to solicit customers.
The same argument was raised and rejected in Sentex Systems, Inc. v. Hartford Accident & Indemnity Co. (9th Cir.1996) 93 F.3d 578. There, the insurer contended "`misappropriation of advertising ideas'" included only "alleged wrongdoing that involves the text, words, or form of an advertisement." (Id. at p. 580.) The court disagreed, pointing out that the claims for misappropriation of trade secrets in the underlying action involved marketing and sales, not manufacture of the product. It stated, "In this day and age, advertising cannot be limited to written sales materials, and the concept of marketing includes *849 a wide variety of direct and indirect advertising strategies." (Ibid.)
In our case, KWP complained plaintiff misappropriated its confidential customer lists to identify and solicit clients about whom it kept private information, including the frequency of visits, preferred services, who assisted with those services, money spent for a visit, and birthdays. These claims of misappropriation of trade secrets related to marketing, not performance of services or manufacturing of a product. Hence, we reject defendant's contention that misappropriation and use of customer lists does not fall within "[misappropriation of advertising ideas."

Injuries Arising from Advertising Activities
Defendant argues there is no duty to defend because there are no allegations in the underlying action that plaintiffs "advertising activity" caused KWP's alleged damages. We disagree.
To be entitled to coverage, there must be a causal connection between the advertising activity and the advertising injury. (Bank of the West v. Superior Court, supra, 2 Cal.4th at p. 1277, 10 Cal. Rptr.2d 538, 833 P.2d 545.) Here, KWP's alleged injuries arose out of plaintiffs advertising activity. KWP claimed it lost clients as a result of Billington and Howard's solicitations of its clients. KWP introduced evidence that 97 percent of Billington and Howard's clients from Bellezza were no longer booking new appointments. One Saturday, out of approximately 25 customers entering plaintiffs salon, 16 were former Bellezza clients. There is a sufficient causal connection between the alleged wrongful acts and KWP's injuries.
An insurer has a broad duty to defend against claims that create even a potential for indemnity. (Montrose Chemical Corp. v. Superior Court, supra, 6 Cal.4th at p. 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153.) "[F]acts disclosing a bare potential for coverage are sufficient to require a defense." (Industrial Indemnity Co. v. Apple Computer, Inc. (1999) 79 Cal. App.4th 817, 827, 95 Cal.Rptr.2d 528.) The insurer may properly refuse to defend only if the claim against the insured "can by no conceivable theory raise a single issue which could bring it within the policy coverage." (Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275-276, fn. 15, 54 Cal.Rptr. 104, 419 P.2d 168.) Here defendant did not show there was no conceivable possibility for coverage.

Identity of Insured
Defendant argues plaintiff is not the named insured under the policy, and this is an "independent basis to affirm" the summary judgment. It maintains that plaintiffs name is nowhere on the policy and points out that the application shows only Kimberly Letter and Salon T'Shea as the insureds. In its summary judgment motion, an account representative for defendant's broker stated that after the application was received "we received a change request asking us to issue the policy to Salon T'Shea, a corporation." Defendant directs us to the declarations page of the policy which shows the named insured, "Salon T'Oshea" [sic], as a corporation.
Plaintiff presented contrary evidence. Kimberly Letter is plaintiffs wife and was at the time the salon was opened. Both plaintiff and Letter signed declarations stating they never requested the policy be changed to show the insured as a corporation. Rather, their application showed the salon as a sole proprietorship. Plaintiff filed a fictitious business name statement showing himself, not a corporation, as the owner, and the business license shows plaintiff, not a corporation, as the sole owner of the salon. This is sufficient to raise a triable issue of material fact as to *850 the identity of the insured and defeats the motion for summary judgment.

The Covenant of Good Faith and Fair Dealing
Plaintiff challenges the denial of its motion for summary of adjudication of defendant's violation of the covenant of good faith, positing three bases: defendant failed to investigate the claim, relied on allegedly undisclosed terms, and failed to follow controlling legal authority. We are not persuaded.
On appeal, the court reviews a denial of a motion for summary adjudication de novo. (Toigo v. Town of Ross (1998) 70 Cal.App.4th 309, 324, 82 Cal. Rptr.2d 649.) To prevail on a motion for summary adjudication, plaintiff must show there is no affirmative defense or no merit to an affirmative defense to a cause of action. (Code Civ. proc., § 437c, subd. (f)(1).)
Here, plaintiff failed to meet this burden. Breach of the covenant requires something more than negligence; the insurer must have acted unreasonably. (Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc. (2000) 78 Cal. App.4th 847, 879-880, 93 Cal.Rptr.2d 364.) In opposing the motion for summary adjudication, defendant presented evidence that it had investigated the claim. Additionally, plaintiff did not provide sufficient evidence to meet the required reliance element of his estoppel claim (see 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 177, p. 859) or that defendant ignored controlling legal authority. The court correctly denied the motion on this issue.
Since the entire action is not resolved, it necessarily follows that plaintiffs motion for summary adjudication as to his entitlement to attorney fees and costs must also be denied.

Punitive Damages
Plaintiff appeals from the order granting defendant's motion to strike punitive damages from the complaint. He contends the complaint alleges defendant's acts were fraudulent and despicable, thereby supporting a prayer for punitive damages. We agree.
We review an order striking punitive damages de novo. (Clauson v. Superior Court (1998) 67 Cal.App.4th 1253, 1255, 79 Cal.Rptr.2d 747.) If an insurer's refusal to defend was in conscious disregard of the rights of the insured, constituting fraud, oppression, or malice, (Civ.Code, § 3294, subd. (a)), punitive damages may be awarded. (Tibbs v. Great American Ins. Co. (9th Cir.1985) 755 F.2d 1370, 1375 [applying California law].) To satisfy the requirements for recovery of punitive damages, in addition to the underlying tort, the complaint must allege the defendant committed the wrongful acts willfully or with an intent to injure the plaintiff. (G.D. Searle & Co. v. Superior Court (1975) 49 Cal.App.3d 22, 29,122 Cal.Rptr. 218.)
The several cases defendant cited in support of the order were appeals from judgments. While there must be clear and convincing evidence to support an award of punitive damages (see Silberg v. California Life Ins. Co. (1974) 11 Cal.3d 452, 462, 113 Cal.Rptr. 711, 521 P.2d 1103), the same is not true at the pleading stage. On a motion to strike, we do not look at evidence, just the complaint. Plaintiff is required only to plead specific facts to show defendant's conduct was committed with one of the required mental states, i.e., oppression, fraud, or malice. (See Smith v. Superior Court (1992) 10 Cal.App.4th 1033, 1041-1042, 13 Cal.Rptr.2d 133.)
Here, plaintiff alleged defendant failed to recognize and act on its duty to defend, despite plaintiffs prompt notice of the *851 claim and defendant's obligation to defend under the policy; ignored controlling legal authority provided by plaintiff; and refused to reconsider its decision after plaintiff provided evidence of coverage. He also alleged defendant acted in this fashion to protect its own interests, to plaintiffs detriment, knowing plaintiff would be harmed. These specific factual allegations showing defendant's conduct and its knowledge of the consequences are sufficient to support an allegation that defendant acted willfully or with the intent to injure plaintiff. We cannot hold as a matter of law that they do not. The trier of fact should decide whether the conduct was egregious enough to warrant imposition of punitive damages. (See Angle M. v. Superior Court (1995) 37 Cal.App.4th 1217, 1228-1229, 44 Cal.Rptr.2d 197.)

DISPOSITION
The judgment is reversed. The denial of appellant's motion for summary adjudication is reversed on the issue of respondent's duty to defend only and otherwise affirmed. On remand the court shall enter an order granting appellant's motion for summary adjudication as to the duty to defend. The order to strike punitive damages is reversed. Because this is an interim proceeding, no costs on appeal are awarded at this time. They may be awarded in the discretion of the superior court to the party ultimately prevailing.
WE CONCUR: O'LEARY, J. and MOORE, J.